State v. Kile, 29 N. M. 55

---

[No. 2517. Aug. 27, 1923.]

## STATE V. KILE.

### SYLLABUS BY THE COURT

1. A recital in the record of one district judge that he is sitting at the request of the regular judge of the court, under the provisions of section 15, art. 6, of the Constitution, is sufficient evidence to show jurisdiction to act, although the better practice would be to have the record show the fact of such request by the regular presiding judge.

2. An adjournment of the district court "until court in course" is an adjournment of the court, and not an adjournment of the term of court.

3. The summoning of talesmen to complete the panel of the grand jury from precincts in proximity to the place where the court is being held is proper, under the provisions of section 13, c. 93, Laws 1917.

4. Evidence of the details of a difficulty between the deceased and the wife of the defendant, occurring in the absence of the defendant, was irrelevant and incompetent, and was improperly admitted. The only competent evidence on the subject was as to what was communicated to the defendant by his wife concerning the difficulty prior to the homicide.

5. Where the state introduces, over the objection of defendant, incompetent evidence, and it becomes expedient or necessary to rebut the same, in order to avoid unfair prejudice, which might otherwise arise from the original evidence, resort may be had to the same class of objectionable evidence, without waiving the original error. State v. Kidd, 24 N. M. 572, 175 Pac. 772, distinguished.

6. A party is bound by the answers of a witness upon cross-examination upon a collateral and immaterial issue.

7. The issue as to this bias, prejudice, or interest of a witness is not a collateral issue, and the witness may be cross-examined and impeached upon his testimony reflecting thereon.

8. It is inadmissible to impeach a witness upon a collateral and immaterial issue.

9. Where there is evidence of adequate cause for heat of passion, and evidence from which the actual existence of heat of passion may be inferred, and where it may be inferred from the evidence that the defendant was so overwhelmed by such heat of passion as not to be able to entertain cool and deliberate malice, it is error to restrict the issue to murder in the first degree, but the issue of murder in the second degree must also, upon request, be submitted to the jury.

Appeal from District Court, Valencia County; Ryan, Judge.

George L. Kile was convicted of murder in the first degree, and he appeals. Reversed and remanded for new trial.

A. A. Sedillo and George S. Klock, both of Albuquerque, for appellant.

It is the contention of the defendant: 1. That the legally designated March, 1919, term of the District Court for Valencia County expired by the adjournment taken on March 13th until May 19, 1919. 2. That the court was- adjourned to the 19th day of May by excusing the jury until said time. 3. That there was nothing to keep the regular March, 1919, term of said court in life and that it was not kept in life from the 13th day of March, 1919. to the 19th day of May, 1919. 4. That the purported indictment filed against the defendant on the 21st day of May, 1919, was not an indictment returned by a legally constituted grand jury of the said District Court of Valencia County. 5. That all of the court entries between March 13th and May 19th were made in vacation. 6. That the order made for the grand jury venire on the 30th day of April, 1919, was not made during the regular term of the said District Court. 7. That Judge Hickey had no authority to issue the said order for a grand jury venire on April 30th. Henry v. Cartright, 13 N. M. 385; Coulter v. County Commissioners, 22 N. M. 24; Weaver v. Weaver, 16 N. M. 98; section 26 of chapter 93 of the Laws of

1917; section 12 of chapter 93 of the Laws of 1917.

It is contended by the defendant that: The grand jury panel as made did not constitute a legal grand jury; the petit jury panel as selected, formed and constituted, was not a legal petit jury panel from which to select the petit jury of twelve persons to try this case and from which the said petit jury which tried this case was selected; as to the motion for continuance, defendant made a substantial compliance with the requirements of the statute as to motions for continuance on account of the absence of evidence of material witnesses.  Territory v. Kinney, 3 N. M. 656; Territory v. Falker, 6 N. M. 464; Territory v. Torres, 6 N. M. 615.

It was error to admit evidence of threats made by defendant.  Raines v. State, 33 South. 1913; Holley v. State, 46 S. W. 39.

· It was error to admit evidence of transaction between the deceased and the wife of the defendant.  Sec. 1471 of the Code of 1915.  The issue was as to the responsibility of the accused for killing alleged.  18 N. M. 143.  See People v. Harris, 209 New York Court of Appeals; People v. Hurtado, 63 Cal. 288; People of the State of New York v. Harry K. Thaw; Salt Lake City v. Smith, 104 Fed. 457; Wigmore on Evidence, volume 1, section 15, pages 43, 44, 45, 46 and 47; Mowry v. Smith, 9 Allen (Mass.); State v. Witham, 72 Maine 531-535.

It was error to admit evidence of statements of the defendant's wife from conversations had with the witnesses, Harding, Carver, and Haverkampf, on March 12th, after the transaction between the deceased and the defendant's wife, and prior to the return of the defendant.  People v. Webb. 11 Pac. 509; Welsh v. State, 3 N. E. 850; Askew v. People, 48 Pac. 524; State v. Coyle, 126 Pac. 307; People v. Harris, 209 New York 70; People v. Hurtado, 63 Cal. 288; Sec. 2178, Code of 1915.

The rule as stated by Wharton, and as sustained by

Underhill, is of general application and the following cases are illustrative of the same. Some of these cases are analagous and quite similar in all essentials to the case at bar: Askew v. People, 48 Pac. supra; People v. Wells, 11 Cal. 509; Botker v. Cassady, 76 N. W. 722; Feltner v. Commonwealth, 64 S. W. 959; Talburt v. Berkshire, 80 Ind. 434; Hathaway v. Crocker, 48 Mass. (7 Met.) 262; Eames v. Whittaker, 123 Mass. 342; Loving v. Commonwealth, 4 Ky. Law 457; Radford v. Commonwealth, 5 S. W. 343; Murphey v. Backer, 7 N. W. (Minn.) 799; McKern v. Clavert, 59 Mo. 243; Roe v. Bank, etc., 67 S. W. (Mo.) 303; Randolph v. Commonwealth, 11 S. W. 813; Ferguson v. State, 100 N. W. (Neb.) 800; Cooper v. Hopkins, 48 Atl. (N. H.) 100; Lambert v. Hamlin, 59 Atl. 941; Leinkauf v. Lombard, 42 N. Y. S. 391; Wimmer v. Metropolitan Street R. R. Co., 86 N. Y. S. 1052; Saunders v. City, etc., 41 S. W. (Tenn.) 1031; State v. Coyle, 126 Pac. (Utah) 305; Texas, etc., v. Phillips, 42 S. W. 852; Golf, etc., v. Matthews, 93 S. W. 1068 (reversing 89 S. W. 983); Commonwealth v. Duncan, 128 Mass. 422; State v. Hawart, 68 P. 155; People v. Greenwall, 108 N. Y. 296; People v. Fleming, 60 Hun. 576; Wilson v. Chicago, 142 N. W. 54; Magness v. State, 63 South. 352; Cash v. Dennis, 139 N. W. 920; State v. Watson, 78 S. E. 324; Moore v. State, 59 South. 3; Compton v. State, 143 S. W. (Ark.) 827; Peters v. State, 146 S. W. 491; Payne v. State, 148 S. W. 694; Slaydon v. State, 58 South. 977; Brock v. State, 141 S. W. 756; Northern Pacific v. Heaton, 191 Fed. 24; Commonwealth v. Bergman, 129 N. Y. S. 1049; Moody v. Perano, 88 Pac. 380; Hayden v. Commonwealth, 131 S. W. 521; Mississippi, etc., v. Backus, 53 South. 398; People v. Leonardo, 199 N. Y. 432, 92 N. E. 1060; Vottorf v. Vottorf, 91 N. E. 617; Donham v. Salmon, 109 N. Y. 959; Southern R. R. Co. v. Hobbs, 43 South. 844; Abbott v. Herron, 118 S. W. 708; Provencher v. Moore, 72 Atl. 880; Atlanta, etc., v. Crosby, 43 South. 318; Cassavan v. Sage, 87 N. E. 893; Jones v. State, 101 S. W. 993; Citizens, etc., v. Jones, 116 S. W. 62; Taylor v. Mc-

Clintock, 112 S. W. 405; Hubbard v. Mnfg. Co., 118 N. W. (Iowa.) 912; John v. Harris, 71 Atl. 81; Metropolitan v. McRay, 47 South. 65, 172; Armstrong v. Vaness. 132 Ill. App. 601; Robinson v. Kistler, 59 S. E. 505.

It was error to admit evidence of statements made by the defendant's wife to others in the absence and without the hearing of the defendant subsequent to the homicide. Crawford v. State, 21 So. 218-219 and cases cited.

In the rebuttal evidence offered and given by and on behalf of the State as to the question of the irrationality of the defendant the State's counsel adopted a method or course of examination whereby the evidence elicited from the State witnesses was not rebuttal evidence at all but was in fact evidence of a purely negative character and wholly incompetent and irrelevant. 9 Enc. of Ev. 865 and cases cited; Wigmore on Evidence, section 664, volume 1, page 760.

The court erred in sustaining the objections interposed by the State's counsel to the questions propounded to the witness, Dr. Grover, relative to the comment that was made by persons who were riding with defendant and expressions heard by the witnesses from said persons with reference to the mental condition and insanity of the defendant. Jones Commentaries on Evidence, volume 11, page 344; Wharton on Criminal Evidence, comments as to the res gestae, page 498, note 506.

The court erred in admitting evidence of Dr. H. M. Smith, called as a medical expert on behalf of the State, based upon a hypothetical case which in its statement of alleged facts was very dissimilar to the facts established or sought to be established by evidence in the case at bar. 7 Enc. of Ev., 474 and 475; People v. Kemmler, 119 N. Y. 580, 24 N. E. 9.

H. S. Bowman, Atty. Gen., and A. M. Edwards, Asst. Atty. Gen., for the State.

As to appellant's contention that the grand jury which indicted him and the trial jury which convicted him were illegally drawn, if there were any merit therein, as a matter of law, such objections are purely technical and it is not shown that the defendant was prejudiced thereby.    Territory v. Emilio, 14 N. M. 147, 154.

The Territorial Supreme Court and this Court have repeatedly held that the granting of a continuance is discretionary with the trial court. Ty. v. Yee Daw, 7 N. M. 439, 443; Ty. v. Walker, 16 N. M. 607; Ty. v. Watson, 12 N. M. 419; Ty. v. Padilla, 12 N. M. 5, 6; Waters v. Treasure R. & M. Co., 22 N. M. 348; State v. Garcia, 26 N. M. 72.    No abuse of discretion is shown.   Ty v. Price, 14 N. M. 262; Mogollon Gold & Copper Co. v. Stout, 14 N. M. 245; Waters v. Treasure R. & M. Co:, 22.N. M. 348.

Appellant complains of testimony admitted by the trial court to show the state of mind of defendant before the killing, and threats generally against the people of the community in which the deceased lived.

Uncommunicated threats may be admitted: "(a) To show who began the affray, (b) To corroborate evidence of communicated threats, (c) To show the attitude of the deceased." Ty. v. Hall, 10 N. M., 545, 553.

"A threat to kill or injure someone not definitely designated, is admissible in evidence, where other facts adduced give individuation to it." 21 Cyc. 922. State v. Gates, 69 Pac. 385, 387, 28 Wash. 689. State v. Fitzgerald, 130 Mo. 407, 414, 32 S. W. 113. State v. Harlan, 130 Mo. 381, 390, 32 S. W. 997. People v. Suesser, 75 Pac. 1093, 1096. Ann Cases 1912, c. 482, N. Wharton on Criminal Evidence, Vol. 2, Secs. 907 and 908. Threats against a class to which deceased belonged are also admissible. 21 Cyc. 922. 13 R. C. L. 925. Wharton's Criminal Evidence, Vo.1 2, Sec. 909.

. Appellant claims that the admission of certain evidence was erroneous but all of this testimony was admissible on the part of the State as being a part of the res - gestae.    People v. Glaze, 72 Pac. 965; People v. Miller, 53 Pac. 816; 21 Cyc. 924, 925; Collins v. State, 34 So. 993.    See also: Ryan v. State, 100 Ala. 105; 14

So. 766. Jorden v. State, 81 Ala. 20; 1 So. 557. State vs. Chesher, 22 N. M. 319; 161 Pac. 1108. State v. Douthitt, 26 N. M. 538; 194 Pac. 879. State v. Mc-Cahill, 72 Iowa 111; 30 N. W. 553; 33 N. W. 599. Bowlin v. Commonwealth, 34 S. W. 709; 17 Ky. L. Rep. 1319; Dudley v. State, 40 Tex. Cr. 31; 48 S. W. 179; Hetton v. Commonwealth, 84 S. W. 574; State v. Thrailkill. 50 S. E. 551.

It is contended by appellant that both the cross examination and the impeaching testimony of the wife of the defendant were inadmissible. The cross examination was proper and not much objection to it is made by appellant. But it is urged that this cross examination was upon a collateral issue and that the State was bound by the answers of the witness. The motive of a killing is not a collateral issue. But granting, for argument's sake, that the issue is a collateral one generally, the case at bar clearly comes within both of the two exceptions to the rule as laid down by Wigmore. These exceptions are: (Wigmore 1021) First, facts relevant to the issue. Second, facts discrediting the witness as to bias or specific efficiency of the witness. Section 1022, Wigmore on Evidence; Day v. Stickney, 14 Atl. 258; Johnson v. Wiley, 74 Ind. 239; Wharton on Criminal Evidence, 10th Ed. section 482; Gillett on Indirect and Collateral Evidence, page 139 and page 63; Swygart v. Willard, 76 N. E. 755; Fischer v. State, 58 Ala. 215, 219. See Wigmore on Evidence, sections 879, 943, 949-952, 1001-1005; State v. Malmberg, 105 N. W. 614; Jones v. State, 37 So. 390 and cases cited; State v. Matheson, 103 N. W. 137; Cook v. State, 82 N. E. 1047.

Appellant contends that it was the duty of the court to instruct the jury as to murder in the second degree because the defendant's mind was so far impaired as to render him incapable of deliberation.

"Under the modern rule on this subject, there is not deemed to be any condition which will mitigate crime without excusing it." Wharton on Homicide, Sec. 539.

See also Anderson v. State, 43 Conn. 514; Sage v. State, 91 Ind. 143; Porter v. State, 140 Ala. 87, 37 So. 81; State v. Kotovsky, 11 Mo. App. 584.

#### OPINION OF THE COURT

PARKER, C. J.  Appellant was tried and convicted of murder in the first degree, and has brought the case here by appeal.

At the threshold of the inquiry a question is presented as to whether the court below proceeded without jurisdiction at the time of the finding of the indictment.  It appears from the transcript that the regular term of the district court of Valencia county, where appellant was indicted and tried, began on the 3d day of March, 1919, and continued in session until March 13, 1919, when the following order of adjournment of the court was made and entered, namely:

"It is ordered that the court do now adjourn until court in course."

There had been no grand jury impaneled up to this time, but a petit jury had been in attendance upon court, and on March 11th, the following order had been made and entered of record, namely:

"It is now ordered by the court that the members of the petit jury be, and they hereby are, excused until the 19th day of May, and that they be, and hereby are, allowed the amounts set opposite their names for services and for miles traveled in coming from and returning to their homes, to wit: [There followed a list of the names and the amounts allowed to the petit jurors.]"

On April 30, 1919, there appeared the following order:

"Court met pursuant to adjournment, Hon. M. E. Hickey, judge of the Second judicial district of the state of New Mexico, sitting at the request of Hon. M. C. Mechem, judge of the Seventh judicial district, state of New Mexico. * * * It now appearing to the court that it is necessary to have a grand jury at this the March term of the district court, whereupon now the court draws from the jury box of Valencia county, state of New Mexico, the names of 27 persons, from

whom to select a grand jury for the present term of court, to wit: [Here follows the names of the grand jurors drawn.] And it is ordered by the court that venire issue for said persons, returnable on the 19th day of May, A. D. 1919, at 10 o'clock of the forenoon of said day, then and there to serve as grand jurors, which is accordingly done."

The court then adjourned until court in course. On May 19, 1919, the court met. Hon. Raymond R. Ryan, judge of the Sixth judicial district, presiding and sitting at the request of Hon. M. C. Mechem, judge of the Seventh judicial district, and thereupon the grand jury was in due course organized, and returned in due time the indictment in this case.

A motion to quash the indictment was interposed by appellant, and was based upon two propositions. The first is that, at the time Judge Hickey drew the names of the grand jurors from the box and issued the venire for them, the term of the court had been continued until May 19, 1919, and that therefore his action was coram non judice; second, it is argued that Judge Hickey had no authority to issue the venire. The motion to quash the indictment was overruled, and a subsequent plea in abatement was interposed, raising the same propositions, which plea, having been heard upon an agreed statement of facts, was denied.

[1] 1. The second objection to the indictment, above set out, is based upon the theory that one district judge, sitting for another district judge at the latter's request, as provided by section 15 of article 6 of the Constitution, has no jurisdiction to act, in the absence of a record entry showing the request so to do. We do not understand counsel to contend, or to have urged in the court below, that as a matter of fact Judge Hickey had not been requested by Judge Mechem to hold court at Los Lunas. No showing to that effect was attempted in any way. We understand the contention to be simply that the record does not show the fact of the request. The argument is not sound. In the first place, the record contains a recital to the effect that Judge Hickey sat at the request of

Judge Mechem. This is a certificate by a district judge to the effect that he had been requested to act, and acted in pursuance of the request. It is true that the judge of the court himself did not make a formal certificate of the request; but, in the absence of a showing that he had not made the request, this court feels bound to accept the certificate of Judge Hickey that he had been so requested. The better practice, perhaps, would be for a district judge to put upon the record an order or certificate that he had requested another judge to sit in his stead; but, under all the circumstances, we think the jurisdiction of Judge Hickey to act in selecting the grand jury is sufficiently shown by the record.

[2] 2. The first objection to the indictment is based upon the proposition that the term of the court had been on March 13 adjourned until May 19, 1919, and that therefore the action of Judge Hickey in selecting the grand jury was not taken during an existing term of court, and was consequently without jurisdiction. Counsel concedes that we held in Henry v. Lincoln Luchy & Lee Min. Co., 13 N. M. 385, 85 Pac. 1043, that the language "until court in course," employed in this connection, means that the court, and not the term, has been adjourned, and that in the absence of an adjournment of the term of court it continues right along for such business as may come before it. See, also, Weaver v. Weaver, 16 N. M. 98, 113 Pac. 599, and Coulter v. County Commissioners, 22 N. M. 24, 158 Pac. 1086. They argue, however, that, by reason of the provisions of section 26 of chapter 93, Laws 1917, and the action of the court in excusing the petit jury until May 19, the term of the court was thereby adjourned until that date. This seems to us to be an erroneous view of the matter. We could not so hold without reading into the order of adjournment something which does not appear. The argument is based upon the terms in section 26, supra, which provide for an adjournment of the term until some future day when necessary, and for the retaining of the regular panels of jurors for service at some adjourned

term. The court could have proceeded under that section of the statute, and could have adjourned the term, and in that case the argument of counsel would sound. The court did not, however, proceed under that section of the statute, and did not adjourn the term of court. It merely excused the jurors until a future day, leaving the term fully alive and existing for all proper purposes. During said term, and on April 30, 1919, the grand jury was drawn under the provisions of section 12 of chapter 93, Laws 1917, which authorizes such action. The mere fact that the petit jurors were excused until May 19, did not adjourn the term of court, in the absence of an order of the court to that effect.

[3] 3. Further objection to the grand jury was made on the ground that after the return of the original venire only 14 were found to be present and qualified, and that thereupon the judge issued a venire for persons living in the precincts in the immediate neighborhood of the town of Los Lunas, where the court was being held, and did not include persons living in the remote parts of the county. It is argued that this vitiated the grand jury panel. This contention cannot be maintained, in view of the provisions of section 13, chapter 93, Laws 1917, which expressly provides that the district judge may exclude from any special venire the name of any person who resides so far from the place where the court is held as to render it inexpedient to summon them. It follows, from what has been seen, that the action of the court in overruling the motion of appellant to quash the indictment and in denying his plea in abatement was correct.

Certain objections are made to the petit jury in regard to its selection and organization, but we do not deem the same of sufficient importance to require discussion.

[4] 4. It appears from the transcript that the appellant, just previous to the homicide, armed himself with a single-barreled shotgun, and went to the house of one John F. Carver, where without the consent of

Carver he took two guns, one a double-barreled shot-gun, and the other a 30-30 rifle. He left the single-barreled shotgun in the corner, from where he had taken the other two guns. He looked around·the room and found cartridges for the guns. While in the house he expressed his determination to kill the deceased. He then left the house, and went to a schoolhouse, where a Mr. Davey was living at the time, and where the deceased and a Mr. H. J. Haverkampf then were. The appellant fired a shot through the window of the schoolhouse, and then attempted to enter through a door near the window. He then went to another door and entered the building, where he was met by Mr. Davey. Mr. Davey struggled with the appellant, and tried to induce him to desist from his murderous intention to kill the deceased. While this scuffle and argument were going on between the appellant and Davey, Whiteside, the deceased, got up from the floor, where he was lying, and left the house by the east door. The appellant then came into the room which the deceased had left, and asked where Whiteside had gone. The parties told him he went out of the east door of the house. Appellant then went out of the same east door, and shortly thereafter a shot was heard by the parties in the house, and then two more shots in quick succession. The parties in the house then went outside, and saw the appellant coming back from the north of the house. He said: "I have killed the son of a bitch, and he is lying off over there." He offered to show the parties where the body laid; but they objected, and said that he might not yet be dead, and the appellant then said: "I blowed half of his head off, but I will go back and finish him, if he is not dead." The parties objected to the appellant going, and he showed them where the body was and said: "There lays the son of a bitch." Appellant then left the premises, and went back to the Carver house, and reported that he had killed Whiteside, and returned the shotgun to Carver.

The prosecution at an early stage of the trial introduced evidence over the objection of appellant concern-

ing a difficulty had the afternoon previous to the homicide between the wife of the appellant and the deceased. It appears that on this afternoon the deceased went up to the house where the mother of the appellant's wife was living to deliver to her a small load of wood and a rocking chair. While there, the wife of the appellant came out of the house, and the two became engaged in a violent controversy, each using vulgar and opprobrios epithets toward the other, and an actual physical encounter occurring, in which the deceased was struck. in the mouth with an ax handle by appellant's wife, and she was thrown down; her skirt and waist and hands being soiled with mud and grime. The prosecution put on two witnesses who were present at this difficulty, and who related in detail what was said and done. This proof was put forward by the prosecution for the purpose of showing motive on the part of the appellant. The testimony was objected to by counsel for appellant, upon the ground that it was incompetent; the occurrence having taken place in the absence of the appellant. The introduction of the testimony is sought to be justified by counsel for the state in their brief in this court upon the theory that it is of the res gestae of the crime.

Counsel for appellant, however, argue in this court that all this proof lacks relevancy, and could have had no effect whatever upon the mind of the appellant; he being absent at the time and having no knowledge thereof. That the position of the state on this question is not sound would seem to be apparent. The earliest stage at which the doctrine of res gestae could have had any application in this case was when the fact of the difficulty between appellant's wife and the deceased was communicated to him. The fact of the difficulty was communicated to the appellant about 7 o'clock in the evening, and from that time on the acts and conduct of both the appellant and the deceased were a part of the res gestae. Nothing prior to that time could possibly fall within the doctrine. The argument of counsel for appellant seems to us to be sound. The question

was not what actually occurred at the difficulty between the deceased and appellant's wife, but the question was, What did appellant's wife tell him about it? If her recital to him of the occurrence was of such a character as to arouse the passions of the appellant to such an extent that he went out and hunted for, and found and murdered, the deceased, as is shown by proof, then such recital was competent evidence, both for the prosecution and for the defense. The appellant could be actuated only by such things as he knew, and which had been communicated to him by his wife or others. Whether she gave a true or false account of the controversy is immaterial, as is also what actually occurred in the controversy. This evidence, therefore, introduced by the prosecution over the objection of appellant was incompetent from any view of the matter, and it was erroneously admitted.

[5] 5. Counsel for appellant felt impelled, under the circumstances, to contradict the account given by the state's witnesses as to the details of the controversy between deceased and appellant's wife. They put her on the stand for this and other purposes, and she gave her version of the episode, which was greatly at variance with the account given by the state's witnesses, and showed a much more aggravated case of abuse and assault and battery by the deceased than their account showed. She then told on the stand that in the evening, about 7 o'clock, appellant returned to her mother's house, where she was, and she met him, and told him what had happened to her in his absence in connection with the deceased, and related the facts to him as she had testified to them on the stand, and further told him, "Now, honey, we don't want any trouble." She said appellant then asked her where deceased was, and that she told him he was at the Carver house. She showed the appellant the bruises on her ear, leg ,and arm, where she said deceased had injured her, and told him deceased had twice knocked her down with his fist. Appellant soon left the house, and she saw him no more for about two hours, when he re-

turned to the Carver house, where he had taken the two guns as above recited, and stated that he had killed deceased. She was rigorously cross-examined by counsel for the state as to her account of the episode with the deceased, and as to alleged statements and declarations concerning the same to third persons, both before and after the homicide. Upon rebuttal the state was allowed, over the objection of counsel for appellant, to impeach appellant's wife by showing contradictory statements by her to third persons concerning the episode of the controversy with the deceased. This rebuttal testimony was objected to by the appellant, upon the ground that it was impeachment on a collateral issue, and that, the issue being collateral, the state was bound by the witness' answers. That the issue as to the details of the controversy between appellant's wife and the deceased was collateral, irrelevant, and immaterial we have heretofore seen, and under the well-understood rule of evidence the state was bound by the answers of appellant's wife, and was not authorized to impeach her in that regard.

It thus appears that the state first introduced into the case a collateral, irrelevant, and immaterial issue, namely, the issue as to the details of the controversy between the deceased and appellant's wife. These facts never at any stage of the trial became relevant. They could not be relevant, because the only relevant fact growing out of the controversy was the fact as to what the appellant's wife told him in regard to the controversy. The appellant, however, went into the same subject, and through the testimony of appellant's wife developed the details of this controversy. The legal question involved is as to what effect by way of waiver does it have for a party to rebut testimony of an irrelevant character, and to which he objected when the same was produced. This did not render the subject-matter of the inquiry irrelevant, because in its nature it was irrelevant. The only effect which could be attached to the fact that the irrelevant subject-matter was gone into by the appellant might be said to be that

thereby a waiver of the error was possibly effectuated. If no waiver resulted, then appellant may still rely upon the error.

The broad general principle involved is that ordinarily a party may not complain of an error which he himself has invited, or which he has waived, either expressly or impliedly. This doctrine would apply to a case where one party resorts to incompetent evidence without objections, and where the opposite party replies with evidence of the same character. In such case, both are at fault, and neither could complain in this court of the admission or exclusion of the evidence by the court below. 1 Wig. Ev. (2d Ed.) § 15, page 165; I. § 18, page 189. But where incompetent evidence is admitted over objection, and where it becomes expedient or necessary to rebut the same, in order to avoid an unfair prejudice which might arise otherwise from the original evidence, resort may be had to the same class of objectionable evidence without waiving the original error. 1 Wig. Ev. (2d Ed.) § 15, pp. 163-165; Id. § 18, p. 189; 5 Jones, Ev. § 89, pp. 378, 379.

In Salt Lake City v. Smith, 104 Fed. 457, 43 C. C. A. 637, the plaintiff had introduced over the objection and exception of the defendant hearsay evidence, and the defendant resorted to the same class of evidence in defense. It was urged that this amounted to a waiver of the objection. The court, per Sanborn, Circuit Judge, said:

"They had objected to hearsay testimony and had excepted to the ruling which admitted it. They had not invited the error of that ruling, but had protested against it. This was all that they could do. The plaintiffs had induced the court to commit the error, and were thereby prohibited from availing themselves of it in any court of review. Under this error they established their case by hearsay. Were counsel for the city required to refrain from meeting this proof by evidence of like character, under a penalty of a loss of their objection and exception? By no means. They had presented to the court and argued what they deemed to be the law. The court had held that they were mistaken. However firm they were in their conviction of the soundness of their position, the presumption was that they were in error; and it was the

State v. Kile, 29 N. M. 55

part of prudence and their duty to their client and the court
to produce all the evidence which they could furnish in sup-
port of their demands, under the rule which the court an-
nounced, firmly but respectfully preserving their right to
reverse the judgment if they failed to win their suit under the
erroneous rule which the court had established."

In State v. Beckner, 194 Mo. 281, 91 S. W. 892, 3 L.
R. A. (N. S.) 535, the state introduced evidence as to
the violent character of the defendant over his objec-
tion. The court erroneously admitted the evidence.
The defendant, upon his defense, introduced evidence
that his reputation for peace and quietude was good.
It was sought by counsel for the state to claim that this
amounted to a waiver of the error. The court said:

"The distinction between the error assigned in this case
and that in the two cases noted [two former cases] is that the
defendant in those cases voluntarily elicited the same evidence
to which he had objected when introduced by the state,
whereas in this case he objected and protested against the
admission of the testimony tending to prove that he was a
turbulent and violent man, and saved his exceptions to the
ruling of the court, and then, to negative and destroy the ef-
fect of that evidence improperly admitted, he was driven to
the effort to rebut that evidence and prove the contrary. In
a word, he was compelled, over his objection and exception,
to meet an issue which was improperly injected into the case.
*  *  *  In our opinion, the defendant did not waive his
objection and exceptions to the evidence introduced assailing
his character for turbulence and violence by offering evidence
to disprove the same. No other recourse was left to him by
the ruling of the court and the action of the state."

See also, Russ v. Railway Co., 112 Mo. 45, 20 S. W.
472, 18 L. R. A. 823; Gardner v. St. Louis, etc., Ry.
Co., 135 Mo. 90, 36 S. W. 214.

In Short v. Frink, 151 Cal. 83, 90 Pac. 200, evidence
of a conversation was erroneously admitted, and the de-
fendant upon his defense introduced evidence rebutting
the conversation. It was there claimed that the intro-
duction of this evidence by the defendant waived the
error. The court said:

"In addition to the fact that what was said by plaintiff on
this subject was said by him purely in self-defense, solely to
meet and explain the objectionable evidence as far as pos-

State v. Kile, 29 N. M. 55

sible, and cannot well be held to have been voluntary (see 1 Wigmore on Evidence § 18d, note), the testimony of defendant in relation to the interview between himself and Bradshaw differed materially from that given by Bradshaw, in that he said he told Bradshaw that he had been discharged from the case, thus telling him the truth in the matter, instead of a falsehood."

The court held that there was no waiver of the objection, and that the original error was available.

In Cheney's Estate, 78 Neb. 274, 110 N. W. 731, evidence of the testator's incapacity to make a will was erroneously admitted over the objection of the beneficiary. The beneficiary afterwards introduced evidence of the same character supporting the testamentary capacity of the decedent. The court said:

"It is true the general rule is that an error in the admission of evidence is waived, where the party aggrieved thereby subsequently introduces the same evidence [citing cases]. But a different rule obtains where a party, after objecting to evidence and excepting to the ruling thereof, introduces similar evidence, as in this case, solely for the purpose of meeting his adversary's case, rebutting or combating the evidence to which he excepted, but without any intention of abandoning his exceptions."

See, also, Macke v. Wagener, 106 Neb. 282, 183 N. W. 360; Horres v. Berkeley Chemical Co., 57 S. C. 189, 192, 35 S. E. 500, 52 L. R. A. 36.

This is the condition in the present case. The witnesess for the prosecution put appellant's wife in a very bad light before the jury; and it was proper, if not necessary, in order to give her proper standing as a credible witness, to have her give her version of the episode. The situation differs from that in State v. Kidd, 24 N. M. 572, 175 Pac. 772. In that case a photograph of the defendant and deceased's wife was erroneously admitted over defendant's objection. The photograph was relevant to the inquiry, but lacked identification as being the actual photograph of the parties. The defendant went on the stand and furnished the required identification, thus removing the objection of its admissibility. We held that this cured the error com-

State v. Kile, 29 N. M. 55

mitted in the first instance. But in the present case the fact that appellant resorted to incompetent evidence in rebuttal of like evidence by the prosecution did not render any of the evidence competent. It all, remained incompetent, and injected into the case a false and irrelevant issue over the protest of the appellant. The error is therefore still available, and will require a reversal of the case.

[**6**]   6.   The cross-examination of the wife as to the episode was permissible, for the purpose of endeavoring to shake her statement of the circumstances, because she had testified to them much at variance with the witnesses for the state. But, the issue being collateral and immaterial, the state was bound by her answers.

[**7**]   7.   The cross-examination of this witness covered a wide field. Much of the same was devoted to matters reflecting upon her attitude toward the case and her bias, prejudice, and feeling toward deceased. This was proper cross-examination and the witness was properly impeached as to such matters. That such matters are not collateral, see 2 Wig. Ev. (2d Ed.) § 1022; 5 Jones, Ev. §§ 828, 829.

[**8**]   8.   The wife was cross-examined as to various accounts she was alleged to have given to third persons concerning the episode, and then was impeached in that regard. This was clearly inadmissible. What she said to others on the subject was entirely immaterial, unless it reflected upon her bias and credibility as a witness. The material matter was, as before seen, not what occurred, but what she told appellant had occurred.

[**9**]   9.   The appellant asked for and was refused the submission to the jury of the question of his guilt or innocence of murder in the second degree. We have quite recently had occasion to point out the distinction between murder in the first degree and murder in the second degree. See State v. Smith, 26 N. M. 482, 194 Pac. 869. In that case the distinction was made that in

first degree murder the intention maliciously to take life is wilful, deliberate, and premeditated, while in second degree, although the intention maliciously to take life exists, it is without fixed and settled deliberation and coolness of mind. We have also quite recently had occasion to discuss the question of the submission to the jury of the degrees of unlawful homicide. See State v. Trujillo, 27 N. M. 594, 203 Pac. 846; State v. Pruett, 27 N. M. 576, 203 Pac. 840, 21 A. L. R. 579. The law is well settled in this jurisdiction that all degrees of unlawful homicide which are supported by the evidence must, upon proper request, be submitted to the jury, and that it is error to submit any degree which is not within the evidence. The question then is: Was there evidence in this case authorizing and requiring the submission of second degree murder to the jury?

The substance and effect of the evidence is that appellant's wife, about 7 p. m. of the fatal day, told him of the difficulty between her and the deceased. She showed him bruises upon her person and her soiled clothes, and told him that deceased had called her vulgar and obscene names and had twice knocked her down; that appellant asked where deceased was, and, when told by his wife, he went to the house indicated, armed with a shotgun; the deceased was not there, but appellant left his shotgun there and took two other guns belonging to the occupant of the house, secured cartridges for the guns, and declared his intention to kill deceased; he then went to the schoolhouse where deceased and two other persons were; he shot into the house through the window but failed to hit any one; he attempted to enter the house by a door near the window, but, failed in this, he went to another door and entered the building, and was met by one of the two other persons within, who attempted by force and expostulation to prevent him from reaching and killing the deceased, who was in the adjoining room; he declared that he was determined to kill the deceased, regardless of all consequences; he finally succeeded in

entering the room where the deceased had been, but which deceased had left, going out of the house into the night; appellant inquired where deceased had gone, and was told that he had gone out of an indicated door, and he then went out of the same door; shortly afterwards three shots were heard by the two in the house, and immediately appellant appeared, coming toward the house and stated that he had killed deceased; when some one suggested that they go out to the body, as deceased might not be dead, appellant said that he had shot half his head off, but said that he would go back to the body, and if he was still living, he would finish him; the parties refused to allow appellant to go with them to the body, and he shortly left the scene, going to the same house where he had secured the two guns, and there stated he had killed deceased; as he went along the trail back to the house where his wife was, he whistled as he traveled along, as was his common habit or custom to do when in an ordinary frame of mind; he returned the gun with which he committed the deed to its owner; he and his wife shortly left for the railroad station and took the train for Albuquerque, where he was taken into custody; during all of the times in which he was engaged in his murderous design, he was outwardly calm, according to the witnesses, and was apparently under no stress of excitement, but being merely in an apparently determined frame of mind.

But for one fact, this case would be a perfect example of first degree murder, and nothing less. Announced intention to kill, preparation to carry out the murderous intention, pursuit of his victim, finding him and shooting him down like he were a wild beast, and when deceased was unarmed and helpless, are all present here, and all these things were done by appellant when he was outwardly in a cool frame of mind. But there is a fact here which is of the highest import in judgment of this offense. It is the fact of the communication which his wife made to appellant when she related her injuries received at the hands of the de-

ceased. This was clearly adequate cause for great heat of passion. Whether heat of passion was aroused in the mind of appellant was a question of fact for the jury. There is evidence from which heat of passion might have been inferred. While it is true, as before seen, that appellant appeared outwardly calm, but determined, it likewise appears that he went about this terrible thing without the slightest regard for his own safety. He ignored all of the inevitable consequences to himself, and made declarations and committed acts of an inculpatory character in the presence and hearing of every person with whom he came in contact. This was evidence from which the jury might infer that appellant entertained willful, deliberate, and premeditated malice, or, on the other hand, that he was so consumed with a burning, seething passion as to be devoid of the capacity to deliberate upon the nature and consequences of his act, so as to be guilty of murder in the first degree. It cannot be said, as a matter of law, that the provocation, although no justification, was not sufficient to produce in the mind of appellant, as a person of ordinary temper, such a degree of anger, rage, or resentment as to render him incapable of cool reflection. Nor can it be said, as a matter of law, that sufficient cooling time had elapsed between the provocation and the act to enable appellant as a person of ordinary temper to gain control of his reason and fully appreciate the quality and gravity of his act. There was evidence, therefore, justifying and requiring a submission of second degree murder to the jury, and it was error to refuse instructions in that regard.

The defense interposed in this case was that the appellant was insane at the time of the commission of the offense, and at the time of trial. Various complaints are made of the ruling of the court below in regard to the admission or rejection of evidence on this subject. None of the alleged errors, however, seem to be fundamental, and we do not deem it necessary to discuss them.

Other alleged errors are presented, but, as they will not necessarily arise upon another trial, they will not be considered.

For the reasons stated, the judgment will be reversed, and the cause remanded to the court below, with directions to award a new trial; and it is so ordered.

BRATTON, J., and MECHEM, District Judge, concur.