43 P.(2d) 929

**TORRES v. STATE.**

No. 4028.

Supreme Court of New Mexico.

April 8, 1935.

H. M. Rodrick, of Raton, for plaintiff in error.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Atty. Gen., for the State.

WATSON, Justice.

Julian Torres brings error from a conviction of murder in the first degree and a resulting capital sentence.

The first matter complained of is the failure of the court to submit murder in the second degree.

The dead body of the deceased was found lying on a wagon loaded with wood, to which his team still stood hitched. Death was caused by a bullet entering the neck about one and a half inches below the lobe of the right ear, ranging slightly upward, severing the jugular vein and leaving the body "near the lower lobe of the left ear, a little bit behind."

The state was compelled to rely upon circumstances alone to sustain its claims that a felonious homicide was committed, that the crime was murder in its first degree, and that plaintiff in error was the guilty party. The state is also compelled to admit here that if there is any evidence of the second degree of murder, there must be a new trial of this case. Cf., State v. Diaz, 36 N. M. 284, 285, 13 P.(2d) 883.

For present purposes we need not detail all the numerous circumstances which brought the jury to this conviction. We may assume that a felonious homicide was traced to plaintiff in error. That leaves for mention and consideration only such of the circumstances as may throw some light on the grade of the crime.

The plaintiff in error testified in his own behalf, but said merely that he did not kill the deceased.

■■ The state admits that where the evidence is circumstantial, and the facts thus shown "are susceptible of two or more constructions," it is not for the court to decide between them. State v. Trujillo, 27 N. M. 594, 203 P. 846. It thereby necessarily assumes the burden of convincing the court that the facts here are susceptible of but one construction. The position actually taken is that the undisputed evidence shows "that the deceased was killed without warning and while he was driving his wagon along the road."

The circumstances relied on for this conclusion are that the point of entry and course of the bullet are such that the deceased could not have been looking at or toward his assailant; that there is no evidence of any struggle; and that threats of killing had been made.

As has been pointed out recently, the distinction between the two degrees of murder is often troublesome. State v. Reed et al., 39 N. M. 44, 39 P.(2d) 1005, 1006. Upon the correct understanding and application of that distinction much depends. In this case the

life of the plaintiff in error is at stake, and the courts cannot afford to relax principles.

Not so long ago this court undertook to clarify the subject. State v. Smith, 26 N. M. 482, 194 P. 869, 870. In that case not so much was at stake as here. Smith was convicted of murder in the second degree. In his endeavor to obtain a new trial he had everything to gain and nothing to lose. He stood finally acquitted of the capital offense.

■ The Smith Case also differs from the case at bar in this: There error was laid on the submission of murder in the second degree. Here it is laid on the refusal to submit that degree. Theoretically the distinction is immaterial. Since "it is error to refuse to instruct on a degree of homicide of which there is substantial evidence and error to submit a degree of homicide of which there is no evidence" (State v. Reed et al., supra), the court must determine as matter of law in any given case whether reasonable men could differ regarding facts and inferences.

The present case is especially strong in its appeal to conscience. The court refused to permit a verdict which would have spared life. At the same time, the jury was erroneously encouraged to "recommend the defendant to the clemency of the court," and told that "any such recommendation will receive due consideration by the court." The jury did recommend clemency, where no clemency was possible. Seven jurors subsequently joined in an affidavit to the effect that they were misled by the instruction to believe that the court had the power, if clemency were recommended, to impose a penitentiary sen-

tence, and that, except for this, they would not "have voted for a verdict of guilty of murder in the first degree."

Put to it, as we are, to determine whether the circumstances are susceptible of a construction that would make the crime murder in the second degree, we must first come to an understanding of what murder in the second degree is. That, this court deliberately and laboriously undertook to determine in State v. Smith, supra.

Following the statute, there was but one course to be pursued. From the generic offense, murder, Mr. Justice Raynolds, writing the opinion, carved out murder in the first degree. What remained was necessarily murder in the second degree. So, while the task the court set for itself was "to ascertain the meaning of the phrase 'murder in the second degree' as used in the statutes of this state," that task was accomplished when the court had ascertained the meaning of "murder" and of "murder in the first degree," as employed in the statute.

State v. Smith has been often cited to the proposition that the true distinction between murder in the first degree and murder in the second degree is in the kind of malice present. If it be the ordinary malice aforethought of the common law, it is murder in the second degree. But if it be "intensified malice," a "deliberate intention unlawfully to take away the life of a fellow creature," it is murder in the first degree; that "kind of murder * * * deemed more atrocious than others"; not to be implied as a matter of law "when no considerable provocation ap-

pears or when all the circumstances of the killing show a wicked and malignant heart"; but to be proven by external circumstances "raising" the offense to that grade of enormity for which the statute reserves the extreme penalty. This is the result to which many readings of this decision and much reflection bring us.

Just a little later the same author and the same concurring justices reduced the matter to this: Murder in the second degree is "murder with malice, but without deliberation." Malice includes "premeditation." Deliberation is more than mere premeditation, and is the distinguishing characteristic of murder in the first degree. State v. Sanchez, 27 N. M. 62, 196 P. 175.

The error in the Sanchez Case was that the judge overlooked the difference between premeditation and deliberation. Since the interpretation of our statute in the Smith and the Sanchez Cases, there is no reason for making that mistake. "Premeditation," as said in the Smith decision, means merely "thought of beforehand." That meaning has led the courts from time immemorial to give the stock instruction that the intent to kill, if entertained but for a moment, is sufficient. But "deliberation," as said in the Smith Case, means "a thinking over with calm and reflective mind." A little later this court employed the slightly different expression, "fixed and settled deliberation and coolness of mind." State v. Kile, 29 N. M. 55, 218 P. 347, 352.

It is definitely to be gathered from these cases that we speak somewhat inaccurately

when we inquire whether facts which would support a conviction of murder in the first degree may or must support a conviction of murder in the second degree. The question generally is rather whether facts showing the crime of murder are sufficient to raise it to the higher degree.

The question then is whether the facts in this case warranted the trial judge in holding, as matter of law, that the plaintiff in error slew the deceased after thinking the matter over with calm and reflective mind, or after settled deliberation and in coolness of mind.

Here it is to be noted that, while the jury was more than once reminded by the instructions that, to constitute murder in the first degree, the act must have been done with deliberation, it was never told that deliberation in the law of homicide involves a thinking over with calm and reflective mind, or involves a fixed and settled purpose and coolness of mind, or anything equivalent to that thought. Quite suggestive of the contrary, it was told that: " * * * while the law requires that the killing, in order to constitute murder in the first degree, shall be wilful, premeditated and deliberate, still it does not require that the wilful intent, premeditation or deliberation shall exist for any prescribed length of time before the crime is committed. It is sufficient if it was a design to kill distinctly formed in the mind at any moment before the time the fatal shot was fired."

Moreover, the jury was directed, "malice shall be implied when no considerable provocation appears."

If the deliberation of murder in the first degree requires only momentary entertainment of the purpose to slay, and if the malice may be implied from the absence of considerable provocation, we misinterpret the statute and the Smith and Sanchez decisions.

This is not to say that a long time of reflection must precede the act. State v. Mangano, 77 N. J. Law, 544, 72 A. 366. If there has been reflection and the decision has been reached, an immediate execution of the purpose need not change the fact that it was deliberate. The weakness of the instruction is that it fails to regard the vital distinction between premeditation and deliberation, as used in our law of homicide. Notwithstanding the presence of the word "design," it is well calculated to mislead the jury to believe that a momentary impulse, which might have passed or have been controlled if there had been time, is a deliberation meeting the requirements of murder in the first degree. Cf. State v. Speyer, 207 Mo. 540, 106 S. W. 505, 14 L. R. A. (N. S.) 836, Howard v. State, 82 Ark. 97, 100 S. W. 756. It disregards that doctrine that stands out prominently in the Smith decision, that a merely premeditated murder is a second degree murder; and that the crime rises to the first degree only if shown to have been determined upon after reflection in advance.

The immediate question does not require us to pass upon the soundness of these instructions. They are important, however, because in them we undoubtedly find the standard of law by which the judge acted when he ruled that there could be no second-degree murder in this case.

And this may be a fit occasion to remark that, according to our observation in numerous cases, the clear distinction which this court, in interpretation of the statute, has drawn between the two degrees of murder, has not been generally grasped by those whose duty it is to instruct juries. Few charges coming to this court clearly embody it.

True it is that malice may be implied from an absence of considerable provocation, and that the intent to kill need have been entertained for but a moment. But those are principles of the law of murder in the second degree. They come down to us from the common law, when murder was simply the unlawful killing of a human being with malice aforethought. When the Legislature divided the crime of murder into degrees and segregated from the others those forms of murder deemed most atrocious, reserving for them the highest penalty within society's power to exact, something more was required to convict of the higher degree. Premeditation and implied malice do not suffice. Deliberation and express malice are necessary. When a case occurs in which the specific intent to kill is to be inferred only from the lack of considerable provocation and the purpose to slay is not shown to have been calmly and deliberately arrived at, it is a case of murder in the second degree.

Let it go unchallenged that there was no struggle, and that this unarmed man was not looking at or threatening plaintiff in error when the shot was fired. We do not see how these facts can be deemed conclusive in determining the character of the slayer's malice.

The more illuminating fact is that the plaintiff in error had threatened the life of the deceased. A month or two before the homicide he told a state's witness that the deceased "had stole four dollars and sixty cents from him"; that "he wouldn't be able to steal from anybody else,—that he wouldn't steal from anybody else"; that "he was going to shoot him."

But, though the witness and plaintiff in error met frequently, being sheep herders on adjoining ranches, the next time they talked plaintiff in error "just laughed on account of this stealing the money from him." At other times when they met "he didn't say much," and, except for the one time, never said "anything about going to shoot" the deceased.

If the plaintiff in error entertained the settled purpose to kill the deceased in revenge for this wrong, and waylaid or overtook the deceased and accomplished the purpose, the verdict is a just one. We think, however, that the inference is one that the jury, and it alone, could draw. The threat itself is sinister. But the after conduct leaves much to be inferred as to whether it was seriously made. The witness said nothing as to the manner or apparent state of mind of the plaintiff in error at the time. It was not for the judge to determine the weight to be given to the threat. We think he would not have done so except for the misapprehension disclosed by the instructions as to the true nature of murder in the first degree.

It is also contended that the court erred in failing to submit voluntary manslaughter. This we overrule on the present

record. There was no evidence of heat of passion, and none of provocation. To make manslaughter out of this homicide it is necessary to indulge in pure speculation. Neither judge nor jury is at liberty to do this. Cf.; State v. Trujillo, supra. On the contrary, malice is implied from this unexplained killing with a deadly weapon. State v. Gilbert, 37 N. M. 435, 24 P.(2d) 280.

Appellant cites State v. Burrus, 38 N. M. 462, 35 P.(2d) 285, 286. There we held that a charge of murder embraces one of voluntary manslaughter. Whether evidence of first-degree murder necessarily includes evidence of voluntary manslaughter is a different question. State v. Reed et al., supra.

Other errors are assigned, but need not be considered. Few, if any, of them are likely to recur in this case.

The judgment must be reversed, and the cause will be remanded, with a direction to grant a new trial.

It is so ordered.

SADLER, C. J., and BICKLEY, and ZINN, JJ., concur.

HUDSPETH, J. (specially concurring).

With all respect due to my learned brethren, I find myself unable to concur in the ruling that the court erred in not submitting instructions on murder in the second degree. When it became the duty of the trial court to make the momentous decision as to whether instructions on murder in the second degree would result in the discharge of the defendant (see State v. Reed et al., 39 N. M. 44, 39 P.(2d) 1005), there had been presented but one theory—threat followed by assassination —and the threat had neither been explained nor denied.

"Where the existence of deliberate malice in the slayer is once ascertained, its continuance down to the perpetration of the meditated act must be presumed, unless there is evidence to repel this presumption." 29 C. J. 1102.

The majority of the court, apparently, base their decision upon a doubt of the seriousness of the threat, founded upon the facts that the assassin laughed and failed to repeat the threat when the subject was later mentioned. The evidence of the seriousness of the threat furnished by the corpse of the assassin's victim cannot be brought in question by such fancies. Assassins do not ordinarily publish their plans or intentions. "He meditates revenge who least complains."

I concur, however, in the result, mainly because the court instructed the jury that they might recommend clemency, when the only sentence the court could pronounce under the instructions given was death. Evidently inadvertently given, and probably invited error, yet this instruction does such violence to the trust and confidence which the jury has a right to repose in the court, that I feel that the verdict of murder in the first degree, which was accompanied by a recommendation of clemency, should not be permitted to stand.