55 P.(2d) 740

**STATE v. HALL.**

No. 4063.

Supreme Court of New Mexico.

Dec. 24, 1935.

Rehearing Denied March 23, 1936.

Gilbert & Hamilton, of Santa Fé, and Charles F. Fishback, of Fort Sumner, for appellant.

Frank H. Patton, Atty. Gen., and Edward P. Chase, Asst. Atty. Gen., for the State.

HUDSPETH, Justice.

The opinion filed October 3, 1935, is withdrawn, and the following is substituted therefor.

On the 24th day of July, 1934, William Hall was placed upon trial and convicted of murder in the first degree, and from the judgment and sentence of death pronounced upon the verdict this appeal is prosecuted. The killing occurred at the home of the defendant, and the fatal shot was fired by the defendant while he was in a storeroom situate 27 feet from the cabin in which he lived, or while he was standing in the door of the storeroom. The deceased was on horseback in the yard, 40 feet away.

About 6 o'clock on the morning of June 21, 1933, A. W. Garver, a 14 year old boy, the son of deceased, met John Wesley Hall, the 10 year old son of defendant, in defendant's pasture, and after words passed between them, young Hall started running for a tree screaming for his mother. He testified that A. W. Garver, who was on horseback, was attempting to ride him down or run over him, and that he ran to the tree for protection. His mother arrived on the scene and attempted to catch hold of the bridle reins of the horse of A. W. Garver. Later the defendant, on crutches, approached within 150 yards of the scene, and, according to the state's witnesses, threatened, with a rifle he was carrying, to shoot A. W. Garver off the horse, if he did not stop. A. W. Garver galloped home, some 500 yards

away, reported to his father that the defendant had threatened to shoot him, whereupon the deceased saddled the horse, mounted, and took his son, A. W. Garver, on the horse behind him, and proceeded to the home of the defendant. There he met the wife of defendant, and his son, John Wesley, in the yard, asked for the defendant, and according to the testimony of A. W. Garver:

"Mrs. Hall says he is in the house under shelter. So Mrs. Hall said if he wanted to see anybody he would have to talk to her. Daddy said he didn't like to talk to women. * * *

"Q. What took place after Mrs. Hall said to your Daddy that he would have to talk to her? A. Well then, Daddy went to telling her about Wesley rocking the mules and telling lies on me.

"Q. Who said this, your Daddy? A. Yes sir.

"Q. All right, then what took place? A. And then Daddy told her about Hall drawing a gun on me and Mrs. Hall said just a lie, and Daddy said just another one then the first shot was fired."

According to the testimony of the defendant, and his son, John Wesley, the deceased had called Mrs. Hall a vile name, and referring to the defendant had said: "Where is the crippled s—— of a b——, I will get him," and made a motion toward his pistol pocket, whereupon the defendant fired two shots from the door of the storeroom. The second shot inflicted the mortal wound, from which Garver died

within an hour. According to undisputed testimony, deceased was a gunman, and had a bad reputation for peace and good order. These boys had had some trouble before, but there had been no serious dispute or bad blood between deceased and the defendant.

The counsel of defendant, in the trial court, agreed that instructions on first and second degree murder and voluntary manslaughter should be submitted. Instructions on these degrees were given, and the court also defined lying in wait. The learned trial judge, in conformity with the Rules of Pleading, Practice and Procedure, effective July 1, 1934, gave defendant's attorneys time and opportunity to examine the instructions before they were read to the jury. No objection thereto was made.

Other counsel now insist that defendant did not have a fair trial because of fundamental error committed by the trial court in its instructions defining murder in the first degree; that if the jury believed merely that all of the elements of second-degree murder were present, then under the court's instructions that was all that was necessary as a basis for a first degree verdict. Defendant's counsel further maintain that the trial court rule No. 70-108, effective July 1, 1934, reverses State v. Diaz, 36 N.M. 284, 13 P.(2d) 883, and is not applicable to the case at bar which was pending at the time of its adoption. N. M. Const. art. 4, § 34 reads as follows: "No act of the legislature shall affect the right or remedy of either party,

or change the rules of evidence or procedure, in any pending case."

■ Many of the rules effective July 1, 1934, are merely restatements of rules of court or statutes, but rule No. 70-108 in its application to instructions on murder falls in a different class, and effects a change in the rule of procedure in force at the time of its adoption. State v. Simpson, 39 N.M. 271, 46 P.(2d) 49.

■ The case at bar is not on all fours with the Diaz Case, but it is within the legal intendments of the rule there announced. There is little difference in the court failing entirely to instruct on a degree of murder and in giving a fundamentally erroneous instruction in differentiating between the degrees thereof.

The following are instructions of which the defendant complains:

"As to premeditation and deliberation, I charge you that if you believe from the evidence beyond a reasonable doubt that the defendant formed the purpose maliciously to kill the said A. W. Garver and had meditated and deliberated upon so doing, if he so did, then no matter how short the time of such deliberation and premeditation, though it be for only a single moment, it will be sufficient. All that is required upon this point, is that the design to kill was really formed in the mind of the defendant at or immediately before he so killed the said A. W. Garver if he so did."

" 'Deliberate' may be defined as not suddenly and after the mind has weighed all the matters presented to it."

"Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show a wicked and malignant heart."

"Premeditated malice aforethought exists where the intention to unlawfully take human life is deliberately formed in the mind and that intention thought of before the fatal deed is done. There need be no appreciable space of time between the formation of the intention and the killing itself. It is only necessary that the act of killing be preceded by a concurrence of the will and premeditation on the part of the slayer."

Support can be found for the instructions of the learned trial judge both in text and decisions from other states, but in this jurisdiction a distinction has long been made between "premeditation" and "deliberation."

In State v. Smith, 26 N.M. 482, 194 P. 869, 872, we said: " 'Aforethought' means thought of beforehand for any length of time, however short, before the doing of the act. State v. Dickson, 78 Mo. 438, 440. It is in this respect an exact synonym for 'premeditation.' 'Premeditation' means nothing more nor less than thought of beforehand, as shown from the Latin derivation. In all cases of murder then we have premeditated malice. The statute defining express malice adds to premeditated malice

an additional mental state, viz. deliberation; that is to say, there is not only premeditated malice present, but it is accompanied by a deliberation—that is, a thinking over with calm and reflective mind—to do the fatal act."

This rule has been consistently followed. State v. Sanchez, 27 N.M. 62, 196 P. 175; State v. Kile, 29 N.M. 55, 218 P. 347; Ex parte Simpson, 37 N.M. 453, 24 P.(2d) 291; Torres v. State, 39 N.M. 191, 43 P.(2d) 929, 931; State v. Wickman, 39 N.M. 198, 43 P.(2d) 933; State v. Bentford, 39 N.M. 293, 46 P.(2d) 658.

In Torres v. State, supra, the court, speaking through Mr. Justice Watson, said:

" 'Premeditation,' as said in the Smith decision, means merely 'thought of beforehand.' That meaning has led the courts from time immemorial to give the stock instruction that the intent to kill, if entertained but for a moment, is sufficient. But 'deliberation,' as said in the Smith Case, means 'a thinking over with calm and reflective mind.' A little later this court employed the slightly different expression, 'fixed and settled deliberation and coolness of mind.' State v. Kile, 29 N.M. 55, 218 P. 347, 352. * * *

"If the deliberation of murder in the first degree requires only momentary entertainment of the purpose to slay, and if the malice may be implied from the absence of considerable provocation, we misinterpret the statute and the Smith and Sanchez decisions.

"This is not to say that a long time of reflection must precede the act. State v. Mangano, 77 N.J.Law, 544, 72 A. 366. If there has been reflection and the decision has been reached, an immediate execution of the purpose need not change the fact that it was deliberate. The weakness of the instruction is that it fails to regard the vital distinction between premeditation and deliberation, as used in our law of homicide. Notwithstanding the presence of the word 'design,' it is well calculated to mislead the jury to believe that a momentary impulse, which might have passed or have been controlled if there had been time, is a deliberation meeting the requirements of murder in the first degree. Cf. State v. Speyer, 207 Mo. 540, 106 S.W. 505, 14 L.R.A.(N.S.) 836; Howard v. State, 82 Ark. 97, 100 S.W. 756. It disregards that doctrine that stands out prominently in the Smith decision, that a merely premeditated murder is a second degree murder; and that the crime rises to the first degree only if shown to have been determined upon after reflection in advance. * * *

"When the Legislature divided the crime of murder into degrees and segregated from the others those forms of murder deemed most atrocious, reserving for them the highest penalty within society's power to exact, something more was required to convict of the higher degree. Premeditation and implied malice do not suffice. Deliberation and express malice are necessary. When a case occurs in which the specific intent to kill is to be inferred only from the lack of considerable provocation

and the purpose to slay is not shown to have been calmly and deliberately arrived at, it is a case of murder in the second degree."

For the reasons stated the judgment of the trial court will be reversed, the verdict of the jury set aside, and the cause remanded to the trial court with directions to grant defendant a new trial.

It is so ordered.

SADLER, C. J., and ZINN and BICKLEY, JJ., concur.

BRICE, J., did not participate.