355 P.2d 275

STATE of New Mexico, Plaintiff-Appellee,

v.

Jose V. ULIBARRI, Defendant-Appellant.

No. 6656.

Supreme Court of New Mexico.

Sept. 15, 1960.

Traub & Traub, Albuquerque, for appellant.

Hilton A. Dickson, Jr., Atty. Gen., Philip R. Ashby, Boston E. Witt, Asst. Attys. Gen., for appellee.

HENSLEY, District Judge.

Jose V. Ulibarri was convicted of murder in the first degree. The jury specified life imprisonment as the punishment. The defendant now appeals from the judgment

of conviction and sentence imposed by the District Court of Guadalupe County.

The background of the fatal incident discloses that Jose Valentin Ulibarri, the appellant, is a widower. For some four or five years immediately preceding January 1, 1959, the appellant and Rosa Flores had cohabited in the home of Rosa Flores. On New Year's Day, 1959, the appellant and Rosa Flores awoke, breakfasted and proceeded to a motel where Rosa was then employed as a maid. The appellant left the motel around mid-morning after lending aid to his companion and went to a tavern where he remained until past the noon hour. During this period Rosa Flores telephoned to the tavern to inquire about Valentin and was advised by the bartender that Valentin was at that time present and sitting with a blonde. Near the noon hour Rosa Flores arrived at the tavern somewhat incensed over the information given to her. After having lunch together, Rosa and Valentin left the tavern to go to another similar establishment. At the second tavern visited, Rosa was insulted by one Rafael Sena. This led to a fight between Sena and Valentin Ulibarri. After this episode, the appellant and Rosa Flores departed and visited still another tavern where they remained until five o'clock in the afternoon. Meanwhile the appellant had consumed a considerable quantity of beer. At this point the appellant and Rosa Flores went home.

After arriving at Rosa Flores' home, the appellant went into a bedroom adjacent to the kitchen to prepare a fire in the stove. Rosa Flores remained in the kitchen. The appellant did not immediately start the fire, but returned to the kitchen where he saw Rosa Flores by some cabinets, apparently searching for something. The appellant was asked by Rosa Flores if he had started the fire yet, and to which he replied that he had not. He then turned around and started back into the bedroom, when he heard a "cracking" sound and turned again and saw Rosa Flores putting a bullet in the chamber of a .22 rifle. Rosa said to the appellant, "I am going to kill you, you son-of-a-bitch. If you are no good to me, you are no good for anyone else." The appellant then seized the rifle barrel and said to Rosa, "Are you crazy, or what is the matter with you?" Rosa again repeated her earlier declaration. A struggle ensued and, according to the appellant, both the appellant and Rosa fell on the floor and the rifle discharged killing Rosa Flores.

There were no witnesses to the events in the home of Rosa Flores except the appellant.

Immediately after the fatal shot, the appellant went to the home of his father and

was from there driven by car to the justice of the peace. The justice of the peace notified the sheriff around 5:30 o'clock p. m. The sheriff, Jose F. Gutierrez, interrogated the appellant at 6:30 p. m. on the same day and elicited the information concerning the events of the day as later testified to by the appellant up to the point of seizing the rifle. On this matter the sheriff quoted the appellant to the effect that the appellant grabbed the rifle and wrestled with Rosa Flores for its possession. The rifle fell to the floor. Rosa Flores tried to reach the rifle when the appellant struck her and knocked her to the floor. The appellant then grabbed the rifle and without aiming shot it, killing Rosa.

The appellant points to seven alleged errors occurring in his trial in the district court. Our attention is attracted to and held by the absence of any instruction to the jury on voluntary manslaughter.

The defendant at the proper time submitted in writing his requested instruction number seven which was a correct instruction on voluntary manslaughter. This instruction was refused and no instruction was given on that degree of homicide.

This court has often held that the trial court must instruct the jury in every degree of the crime charged when there is evidence in the case tending to sustain such degree. See State v. Smith, 26 N.M. 482, 483, 194 P. 869. In the case of Territory v. Lynch, 18 N.M. 15, 133 P. 405, 409, this court said:

"The thirteenth error assigned alleges error by the trial court in refusing a requested instruction as to manslaughter, it being urged that there were sufficient facts to require such instruction. It is needless to cite authority for the proposition that, where there is any evidence tending to show such a state of facts as may bring the homicide within the grade of manslaughter, defendant is entitled to an instruction on the law of manslaughter, and it is fatal error to refuse it. The facts pertaining to this question may be presented with greater certainty and detail at the next trial of this case, and it seems unnecessary to discuss the facts disclosed in the present record in connection with the present opinion."

We hold that the instructions given to the jury should have included an instruction on the law of voluntary manslaughter. See State v. Kidd, 24 N.M. 572, 175 P. 772; State v. Davis, 36 N.M. 308, 14 P.2d 267; State v. Layman, 39 N.M. 127, 42 P.2d 201.

One other contention made by the appellant merits attention lest fatal error recur upon a new trial. The district court in its instruction to the jury defined "deliberate" as follows:

" 'Deliberate' means that which is not sudden, but which is done after the mind has weighed all of the matters presented to it."

The foregoing definition was also given in State v. Hall, 40 N.M. 128, 55 P.2d 740, and by this court held to be inadequate.

Further the definition of "Express Malice" as given by the trial court is misleading. The jury could have believed from the instruction given that malice might be implied. While malice may be implied, it is to be borne in mind that implied malice does not suffice to constitute murder in the first degree in this jurisdiction. See Torres v. State, 39 N.M. 191, 43 P.2d 929.

Other contentions advanced by the appellant are found to be without merit.

In view of the foregoing, the judgment must be reversed, and the cause will be remanded, with a direction to grant a new trial.

It is so ordered.

COMPTON, C. J., and CARMODY, MOISE and CHAVEZ, JJ., concur.