46 P.(2d) 57

**STATE v. WILSON et al.**

No. 4033.

Supreme Court of New Mexico.

June 6, 1935.

J. S. Vaught, of Albuquerque, John T. Watson, of Santa Fe, and C. C. McCulloh, of Estancia, for appellants.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

BICKLEY, Justice.

Appellants were convicted of second-degree murder for the killing of Mrs. W. C. Penland. Motion for new trial was overruled, and they have appealed.

There had previously existed some ill feeling between the Penlands and the appellant Chris Wilson. In the forenoon of the fatal day, W. C. Penland, husband of the deceased, and appellant Chris Wilson, father of appellant John Wilson, each traveling the highway in wagons, met. Penland stopped and demanded that Wilson do so which demand was disregarded. A short time afterwards, the Wilsons, father and son and two daughters, set out in a wagon loaded with water barrels to get water at one Mitchell's. Before the Wilsons set out on this trip, John Wilson armed himself with a 38-caliber pistol and Chris Wilson with a 30–30 rifle. The Wilsons overtook Mr. Penland and his wife (deceased) who were traveling by wagon, and, passing them, stopped in front of the Penland wagon. An argument ensued over some chattels and insulting language was used by Chris Wilson toward Mr. Penland, which was responded to in kind by Penland. According to the state's view of the evidence, Chris Wilson stooped to get his gun, whereupon Mr. Penland went after his gun, and the shooting began with an interchange of fire between them. John Wilson jumped out of the wagon in which he was riding with his father and sisters, and shot four times at Mr. Penland; one of the shots taking effect. During the gun fight, Mrs. Penland was fatally shot by Chris Wilson, as appellants claim unintentionally.

The court instructed the jury as to the law of murder in the first and second degrees and as to voluntary manslaughter, and also as to the law of self-defense in addition to the usual stock instructions. The first and second points which were urged are made on behalf of John Wilson, and are thus stated:

"Point I. The court should have sustained defendants' motion for an instructed verdict for John Wilson made at the close of plaintiff's case and at the close of defendants' case for the reason that there was no evidence showing that John Wilson was the principal in the crime charged and no evidence showing that John Wilson was an aider and abettor to the crime charged.

"Point II. That the court erred in giving to the jury instruction 6 defining an aider and abettor for the reason that said instruction did not properly set forth the necessary elements to the crime of aiding and abetting, and the court erred in giving to the jury instructions 10, 12 and 13 as they were therefore erroneous, being based on the erroneous definition of an aider and abettor as set forth in instruction 6."

It appears that both appellants were shooting at Mr. Penland with deadly firearms, apparently with the common design of killing him. If the acts of either of the appellants had resulted in Penland re-

ceiving a bullet wound from which he had died, and the acts were not shown to be excusable or justifiable, the offense would have been murder or voluntary manslaughter, as the accused would have been presumed to have intended the consequences of their acts in the unlawful use of deadly weapons.

■ The evidence in this case, if believed by the jury as it apparently was, was sufficient to warrant them in the belief of the existence of a common design on the part of both appellants to kill Mr. Penland. Where there is a common design to kill one person, but by mistake or misfortune another is killed, all engaged in effectuating the design are amenable. We think the law as applied to the facts in the case at bar, in so far as the intent to kill the deceased is concerned, was correctly stated by the court in instruction No. 12, as follows: "In connection with and under the charge of murder in the first and second degrees, when a person unlawfully, willfully and feloniously, and not in the necessary defense of his life, his family or property, shoots off and discharges a loaded pistol or rifle and does so with intent to take the life of any particular person, and with malice toward such person as heretofore defined to you, but that the shot or shots so discharged misses the particular person and strikes and kills a different person—then such malice and intent directed at such particular person is transferred and considered in law as directed toward the person actually shot and killed. So that in this case, in addition to considering from the evidence and under the said charge of murder in the first and second degrees heretofore given you, as to whether or not the defendants acted with malice directed against the said deceased, Mrs. W. C. Penland, and with direct intent to kill her—you may further consider as to whether said defendants so acted with malice directed against the witness W. C. Penland, and with intent to kill him; and accordingly, you are further instructed that, if you believe from the evidence beyond a reasonable doubt that the defendants, or one of them, and the other aiding and abetting, fired the shots that struck and killed the deceased, Mrs. W. C. Penland, and that the defendants in so firing said shots intended to shoot and kill the said witness W. C. Penland, and in so doing were acting with malice towards said W. C. Penland—then in law the defendants are held to have intended to shoot and kill the deceased, Mrs. W. C. Penland, and that they were acting with malice toward her."

In considering the liability of the appellants and each of them, it is just as if the person killed had been the person shot at. State v. Carpio, 27 N. M. 265, 199 P. 1012, 18 A. L. R. 914. It appears from the evidence that both appellants were shooting at Mr. Penland.

A person being aware of the malice or criminal intent entertained by a person discharging a deadly firearm at another with fatal results, and the homicide is not excusable, and aids and abets in the commission of such an offense, is subject to the same punishment as the person who fires the effective shot. See chapter 105, Laws 1933. The court in instruction No. 6 referred to the provisions of this statute, quoting the following portion thereof: "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished, as principals." Section 1.

And defined "aid" and "abet" as meaning: "To help, assist or facilitate the commission of a crime, or to promote the accomplishment thereof, or to help in advancing or bringing it about; or to encourage, counsel or incite as to its commission."

There is evidence in the record which, if believed by the jury, would warrant them in concluding that the defendant John Wilson had armed himself with a deadly weapon and was intentionally present at the scene of the difficulty, to render aid to his father in the event he should need it in an anticipated controversy with Penland.

The defendant requested an instruction reflecting the view that it was lawful for John Wilson to arm himself under the circumstances disclosed by the evidence. These circumstances, in connection with the evidence that Chris Wilson was discharging his rifle at Mr. Penland in the immediate presence of appellant John Wilson when the latter entered into the affray and effectively fired his pistol at and toward said Penland, are enough to show that he joined in his father's design to kill Mr. Penland and employed the means to help, assist, and facilitate bringing about the accomplishment of the design. The evidence repels the idea that John Wilson was acting independently of his father. He had personally no quarrel with Mr. Penland, and apparently he made his father's quarrel his own, or at least, knowing that his father had quarrelled with Penland, accompanied him on the fatal day to fight upon his father's side in case a difficulty arose.

In Wharton on Homicide (3d Ed.) § 50, it is said: "Where one was intentionally present for the purpose of aiding another, and knowingly assisted him, the conclusion is inevitable that the assistance was rendered knowingly, intentionally and with malice aforethought. * * * And the guilt of the aider and abetter is

not wholly dependent upon that of the principal; and if he goes into an affray to assist another, without previous concert, and the person assisted kills his adversary, the amenability of the aider and abetter for the killing depends upon his own acts and intent, and not upon the intent of the other, entertained without his knowledge. And the fact that a person intended to aid and abet in the killing of one person, by mistake aided and abetted in the killing of another, does not affect his guilt. The intent of a person aiding and abetting another may be inferred from his conduct, and need not be shown by his statements. * * * The question whether the criminal intent of a principal in the first degree was participated in by the alleged aider and abetter, and whether the alleged aider and abetter knew that the principal acted with criminal intent, is one of fact for the jury. And the existence of such knowledge or intent need not be directly and positively proved, but may be inferred from the circumstances."

In 29 C. J. Homicide, § 44, it is said: "A common design need not have existed for any particular length of time before the commission of the homicide. It is sufficient if there was a community of purpose between the accused and the direct actor at the time the homicide was committed. Although the original assembling of the parties charged was lawful, or was had without any particular object in view,

their subsequent conduct may be of such a character as to be sufficient evidence of guilty participation in the homicide afterwards committed. One who participates in the commission of a homicide with full knowledge of the criminal intent with which the actual perpetrator is acting, thereby adopts the intent of the direct actor as his own."

In Wynn v. State, 63 Miss. 260, cited by Mr. Wharton in note 16 of the text heretofore quoted, it was said: "Such aiding and abetting may be manifested by acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite, or approve of, the crime."

From all of the foregoing, it appears that it is needless to consider the situation at the time the state rested its case. Appellant waived any deficiencies by his own introduction of evidence thereafter. First State Bank v. McNew, 33 N. M. 414, 269 P. 56; Wellington v. Mutual Benefit Health & Accident Association, 39 N. M. 98, 40 P.(2d) 630, decided January 25, 1935.

And in the instant case, we see no error in overruling a similar motion interposed at the close of the case.

An examination of the instructions complained of in the second point, in the light of the record, does not dis-

close any fundamental error, and since appellants made no objection thereto and did not call the trial court's attention specifically to any alleged error therein by proposing what they considered proper instructions in lieu thereof or otherwise, we find this point without merit.

It is next urged that the court should have directed a verdict because the evidence shows that the defendants acted in self-defense. It is true that the evidence offered in their behalf, if believed, would have warranted the jury in giving the defendants the benefit of their self-defense plea, but the evidence adduced by the state presents a different picture. Upon the record, the issue of self-defense was for the jury's decision. We see no error in the court's refusal to direct a verdict of not guilty.

And lastly, the contention that the court erroneously overruled the motion for new trial on the ground of improper remarks made by the district attorney in his argument to the jury is unavailing, as no objection was made at the time, and said remarks are not incorporated into the record by way of bill of exceptions. See State v. Costales, 37 N. M. 115, 19 P.(2d) 189.

Finding no reversible error in the record, the judgment will be affirmed, and

It is so ordered.

SADLER, C. J., and HUDSPETH and ZINN, JJ., concur.

WATSON, J., did not participate.