514 P.2d 297

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**John Stance RUSHING, Defendant-Appellant.**

**No. 9589.**

Supreme Court of New Mexico.

Sept. 21, 1973.

Benjamin M. Sherman, Rose-Marie Gruenwald, Deming, for defendant-appellant.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Jr., Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION ·

OMAN, Justice.

The opinion heretofore issued is withdrawn and the following substituted therefor.

Defendant appeals from his conviction of first degree murder. We affirm.

On December 29, 1971 at about 7:30 p. m., defendant and members of his family left Dallas, Texas, in two automobiles

headed for Los Angeles, California. About 4:30 a. m. the following morning they stopped at some point along the road. Defendant and his wife became involved in an argument and she and the children, except for defendant's sixteen year old son by a prior marriage, returned to Dallas in one of the vehicles. The defendant, his sixteen year old son and a nephew of defendant then proceeded west in the other vehicle.

Defendant and his nephew were taking turns driving and both were drinking whiskey and beer as they travelled. While the nephew drove, defendant slept. Apparently at Pecos, Texas, the nephew relinquished the driving to defendant, and either fell asleep or "passed out" from drinking.

Defendant stopped the automobile either very shortly before leaving Texas or shortly after entering New Mexico and picked up a hitchhiker. The hitchhiker, who will hereinafter be referred to as the decedent, is the person defendant later killed at Deming, New Mexico, on the evening of December 30, 1971. Decedent was a Mexican National and did not speak English. Defendant did not speak Spanish. However, in some manner they had sufficient communication between them that decedent understood he was to take over the driving. He drove for approximately thirty minutes or an hour. During this time defendant was in the back seat with his son.

Either as they approached or were within the city limits of Deming, defendant asked decedent to stop. He asked three or four times before decedent stopped the automobile. Thereupon defendant returned to the driver's seat and the decedent moved to the left rear seat. There is evidence that before getting into the driver's seat defendant went to the rear of the vehicle and opened the trunk for some reason.

After defendant and decedent had changed places in the automobile and decedent was seated directly behind defendant, the defendant turned around and fired four or five shots into the decedent from a gun defendant had secured from some place.

The nephew heard the shots, but claims to know nothing more about the shooting or the events leading thereto.

The son claims to have been half-asleep in the right rear seat, but he heard the shots and saw flashes from the gun.

The defendant removed decedent's body from the automobile and left it near an on-ramp to Interstate Highway 10. He then made inquiry at a service station as to the location of the bus depot in Deming; telephoned a sister in Dallas and told her he was sending his son to her; purchased a bus ticket for his son; and then he and the nephew continued on westward in the automobile.

When later apprehended and charged with murder, defendant pleaded not guilty and not guilty by reason of insanity. The insanity plea was abandoned. His only defense was his claim that he was under the influence of alcohol to such an extent that he was incapable of forming the necessary intent to commit murder in the first degree. There was also evidence that he was taking some pills called "Red Birds," which are apparently a barbiturate. However, there is no evidence as to just how many of these pills he took, when he took them in relation to the time of the murder, or the nature and extent of their effect, if any, upon him.

Defendant relies upon three separately stated points for reversal, which have been briefed and argued on his behalf by his two highly competent, court-appointed attorneys. In addition, the attorneys have listed a number of claimed errors which defendant requested be presented to this court on appeal.

■ Defendant first claims error on the part of the trial court in refusing his requested jury instructions on "diminished capacity." There was evidence that defendant at times in the past had used drugs, but there was no evidence that he was using drugs on the trip from Dallas, except for the "Red Birds" above men-

542

tioned, or was in any way affected thereby at the time of the murder. There was also evidence as to his habitual and excessive use of intoxicants and to his use thereof on some past occasions to the extent that he had lapses of memory. There was no evidence as to any lapses of memory at or near the time of the murder. As shown above, he had been asleep while the nephew drove. He began driving at Pecos, Texas, and continued driving until decedent was picked up some thirty minutes or an hour before the killing.

The only evidence as to defendant's mental state or condition at or near the time of the murder was the testimony of his son that defendant was angry and appeared to be intoxicated, and the following statement of a psychiatrist who had examined defendant:

"* * *. In my opinion at the present time and on or about December 30, 1971, Mr. Rushing was capable of knowing the nature and quality of his acts, the ability to distinguish between right and wrong, and to form the intent to kill. On or about December 30, 1971, he was in a state of voluntary intoxication. This state could possibly reduce his cognition functions (i. e., the ability to know right from wrong) to the point that he would be unable to control his acts however this would be a temporary derangement of mind due to intoxication and not due to a disease of the mind. His behavior after the crime shows that he had the ability to know the nature and quality of his acts and that they were wrong as he sent his son and disappeared himself. * * *"

Defendant requested and the trial court refused the following instructions as to the effect of intoxication or use of drugs upon the questions of defendant's mental state and intent:

"Defendant's Requested Instruction No. 2:

"You are instructed that if you find that the defendant committed the homicide in question and that by reason of either in-

toxication or the use of drugs, or both, the mind of the defendant was incapable of cool and deliberate premeditation, then in that event he cannot be found guilty of murder in the first degree. * * *

"Defendant's Requested Instruction No. 4:

"You are further instructed, no act committed by a person while in a state of voluntary intoxication or in a state of voluntary drug induced stupor, or a combination of both, is less criminal by reason of having been in such condition.

"But, whenever the actual existence of intent is a necessary element to constitute any particular crime, the jury may take into consideration the fact that the accused was intoxicated, in a stupor caused by drugs or a combination of both at the time, in determining the intent with which he committed the act.

"If the defendant did not have the intent to commit murder, then you may not find the defendant guilty of murder in the first degree."

The trial court instructed the jury as to the statutory definition of murder in the first degree [§ 40A–2–1, N.M.S.A.1953 (2nd Repl.Vol. 6, 1972)]; in another instruction listed the essential elements thereof and instructed the jury that each of these elements must be proven to the jury's satisfaction beyond a reasonable doubt; defined each of the essential terms, such as willfully, express malice, deliberation, etc.; and gave its Instruction No. 14, which covered the precise question now before us, and which was as follows:

"No act committed by a person while in a state of voluntary intoxication or in a state of voluntary drug induced stupor, or a combination of both, is less criminal by reason of his having been in such condition.

"But, if, by reason of intoxication or drug influence or both, the mind of the Defendant was incapable of that cool and deliberate premeditation necessary to

constitute murder in the first degree, but that the killing was unlawful and the act was not done under circumstances which would make the killing only voluntary manslaughter necessarily it would be murder in the second degree, as malice would be implied."

Defendant concedes this instruction is almost identical with an instruction given and approved by this court in State v. Padilla, 66 N.M. 289, 293, 347 P.2d 312, 315 (1959). The contention is that: "[t]he present case is on all fours with what this Court decided in State v. Padilla," and, therefore, it was error to refuse defendant's requested instructions for the same reason the Padilla case was reversed by this court for refusal by the trial court to give the following instruction:

" 'If you find the defendant was legally sane, then the Court instructs you that as an additional defense if you find or if you have a reasonable doubt whether by reason of a disease or defect of the mind the defendant was incapable of thinking over the fatal act beforehand with a calm and reflective mind (or with a fixed and settled deliberation and coolness of mind) then, you shall find the defendant not guilty of first degree murder and will pass on to the question of whether he is guilty of a second degree murder.' " State v. Padilla at 293, 347 P.2d at 315.

We are unable to agree. The issue of "diminished capacity" by reason of a disease or defect of the mind is not here involved. Defendant has done nothing more than rearrange and slightly change in his requested instructions the identical elements found in the court's Instruction No. 14, and has then apparently sought to add thereto the concept of "diminished capacity" by reason of disease or defect of mind contained in the quoted instruction from the Padilla case.

Defendant's Requested Instruction No. 2 and the first paragraph of his Requested Instruction No. 4 were merely cumulative of what was contained in the Court's In-

struction No. 14. Thus, it was not error to refuse these requests. Hudson v. Otero, 80 N.M. 668, 459 P.2d 830 (1969); State v. Martinez, 34 N.M. 112, 278 P. 210 (1929); Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App. 1969); State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct.App. 1969).

Apparently the second and third paragraphs of defendant's Requested Instruction No. 4 are predicated upon a claimed "diminished capacity" by reason of intoxication or a drug induced stupor, or by reason of a combination of both, and has no reference or relationship to any claimed disease or defect of the mind. As already stated above, there was no issue presented as to any "diminished capacity" of defendant by reason of disease or defect of the mind. Thus, the last two paragraphs of defendant's Requested Instruction No. 4 are not consistent with the above quoted instruction from State v. Padilla, supra, and, in effect, amount to nothing more than a repetition of the above quoted and referred to instructions given by the trial court. Instructions are to be read and considered as a whole, and, when so considered, they are sufficient if they fairly and correctly state the applicable law. State v. Weber, 76 N.M. 636, 417 P.2d 444 (1966); State v. Fields, 74 N.M. 559, 395 P.2d 908 (1964); State v. Zarafonetis, 81 N.M. 674, 472 P.2d 388 (Ct.App. 1970); State v. McFerran, supra.

The trial court also refused defendant's Requested Instruction No. 3, which is as follows:

"You are instructed that in order to convict a person of murder in the first degree, express malice must be proved—implied malice will not support a conviction of murder in the first degree. * * *"

Defendant relies on State v. Ulibarri, 67 N.M. 336, 355 P.2d 275 (1960), wherein it is stated implied malice does not suffice to constitute murder in the first degree. In Torres v. State, 39 N.M. 191, 196, 43 P.2d 929, 932 (1935), it is stated that pre-

meditation and implied malice do not suffice to convict of first degree murder, but that "Deliberation and express malice are necessary."

The jury was instructed on the definitions of express and implied malice in the exact language of § 40A–2–2, N.M.S.A. 1953 (2d Repl. Vol. 6, 1972); that in order to establish first degree murder the State must have proved decedent had been "unlawfully killed by the defendant, with express malice aforethought"; and that:

"'DELIBERATE' or 'DELIBERATION' is a thinking over with a calm and reflective mind to do an act. Implied malice, as defined above [the statutory definition] is not sufficient to constitute murder in the first degree. In order to find the Defendant guilty of first degree murder, you must find express malice as defined herein [the statutory definition]."

We fail to appreciate what was contained in defendant's Requested Instruction No. 3 which was not contained in the court's instructions. Repetition in instructions is improper. Scott v. Brown, 76 N.M. 501, 416 P.2d 516 (1966); State v. Martinez, supra; State v. McFerran, supra.

■ Defendant next urges that the evidence was insufficient to support his conviction of first degree murder. The contention is that: "There is no evidence of premeditation or cool deliberation and none from which it may be inferred."

The evidence as to defendant's use of liquor and "Red Birds" and his possible anger at the time of the killing is as previously related. We have absolutely no difficulty in finding substantial evidence to support the conviction. As stated in State v. Polsky, 82 N.M. 393, 398, 482 P.2d 257, 262 (Ct.App.1971):

"In determining whether there is substantial evidence to support a conviction, the appellate court must view the evidence in the light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. State v. Parker, 80 N.M. 551, 458 P.2d 803 (Ct.App.1969). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. State v. Encee, 79 N. M. 23, 439 P.2d 240 (Ct.App.1968). The fact that there were conflicts in the evidence does not make the State's evidence insubstantial. State v. Morra, 81 N.M. 631, 471 P.2d 201 (Ct.App.1970). The appellate court may not properly substitute its judgment for that of the jury as to credibility of the witnesses or the weight to be given the evidence. Gallegos v. Wilkerson, 79 N.M. 549, 445 P.2d 970 (1968); State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967); State v. Tafoya, 80 N.M. 494, 458 P.2d 98 (Ct.App. 1969); Rein v. Dvoracek, 79 N.M. 410, 444 P.2d 595 (Ct.App.1968)."

■ Defendant's next ground for reversal is his claim that the trial court erred in denying his motion for change of venue filed pursuant to § 21–5–3, N.M.S.A.1953 (Repl.Vol. 4, 1970).

Some time in April 1972 a bond election was held in Luna County on the question of whether or not a new county jail should be constructed. For several days prior to the election, the public, apparently in small groups, were permitted to go through the jail with a deputy sheriff as an escort. Defendant contended that because some of these people viewed him in jail and, according to him, were told he had been charged with murder in the first degree, the local populace were prejudiced against him.

A hearing was held on this motion, and defendant was the only witness who expressed any opinion that there existed any prejudice against him in the minds of the people in Luna County. The sole foundation for his opinion were his contentions that he had been viewed in jail and had been identified as having been charged with first degree murder. Many of his contentions as to being so viewed and iden-

tified were inconsistent with the testimony of other witnesses.

The State produced eight witnesses, consisting of deputy sheriffs, business people and other residents of the county. All of their testimony was to the effect that they had heard nothing to indicate prejudice against defendant and that in their opinion defendant could get a fair trial in Luna County. The trial court considered the evidence and denied the motion.

The determination, as to whether a change of venue should be granted after a hearing on a motion, rests in the sound discretion of the trial court, and this determination will not be disturbed on appeal absent a showing of abuse of this discretion. The burden of showing such an abuse rests on the movant. State v. Jimenez, 84 N.M. 335, 503 P.2d 315 (1972). Here defendant failed to sustain this burden.

Finally, defendant has listed the following, which he claims are additional errors committed by the trial court:

"1. Defendant asserts that he was denied equal protection of the law contrary to Section 18 of the Bill of Rights of the Constitution of the State of New Mexico.

"2. Defendant asserts that he was deprived of his right to be confronted with a witness against him in the preliminary hearing, contrary to Article VI of the United States Constitution.

"3. Defendant asserts that at least two of the witnesses against him were illegal.

"4. Defendant asserts that one member of the jury was extremely prejudiced by nature and in fact, therefore throwing doubt on the prejudice of the remaining members of the jury.

"5. Defendant alleges that the jury was illegal as it was a thirteen member jury."

No argument is made in support of these contentions, because the record fails to lend support to any of them.

The judgment of conviction and sentence should be affirmed.

It is so ordered.

McMANUS, C. J., and MARTINEZ, J., concur.