555 P.2d 689
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**James HICKS, Defendant-Appellant.**

**No. 10475.**

Supreme Court of New Mexico.

Oct. 26, 1976.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Don D. Montoya, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

MONTOYA, Justice.

Defendant was convicted of first degree murder, after a jury trial in the District Court of Bernalillo County, and was sentenced to death under the mandatory provisions of § 40A–29–2, N.M.S.A.1953 (Supp. 1975).

The facts pertinent to his appeal are as follows: On October 31, 1974, at about 11:20 p. m. one Raymond Lopez (Lopez) left his home to go to his part-time job of cleaning the Old Town Laundry in Albuquerque, New Mexico; thereafter, on November 4, 1974, his body was discovered by one of the owners of the Country Club Motel in Albuquerque in a room previously rented by the defendant. The evidence disclosed that Lopez was dead, having been beaten, his hands tied behind his back and a gag placed in his mouth. He had been strangled with an electric cord. His body was naked from the waist down, and blood stains were found on the carpet and walls of the room where the body was found.

Defendant was arrested in Arizona by a state highway patrolman. Upon receiving notice of the arrest for alleged violations occurring in Arizona, two Albuquerque detectives went there to question him and to return him to New Mexico. In Arizona the defendant made an oral statement and gave a written as well as a tape-recorded statement, wherein he admitted that on October 31, 1974, he had been drinking all day, that he had met Lopez at a bar, and that after it had closed Lopez had given him a ride to his motel room and had gone inside with him to have a drink. The statements continue to the effect that while in the room something that the defendant said had angered Lopez and that Lopez

had come at him with a knife, that defendant had hit him with a table lamp, that Lopez again attacked him with a knife, and that after falling down he did not remember what happened immediately thereafter. Sometime later he remembered that Lopez was lying on the floor next to the bed with part of his legs under it. Defendant pulled Lopez all the way out from the bed, rolled him over and tied his hands behind his back, put a red bandana around his mouth so he could not yell, and then took his pants off. Thereafter defendant left the room. He hitchhiked to Florida, then to Ohio, and was on his way from Ohio to Los Angeles when he was arrested in Arizona. The defendant moved to suppress the statements before trial. His motion was denied and the written statement as well as the tape-recorded one were admitted in evidence at the trial.

On appeal, the defendant argues that the trial court committed error and asserts the following nine points:

"I. Imposition and Carrying Out of the Death Penalty in This Case, Pursuant to N.M.Stat.Ann. § 40A–29–2 (1973 Supp.) Constitutes Cruel and Unusual Punishment and Deprivation of Liberty Without Due Process of Law.

"II. The Statute Purporting to Re-Establish the Death Penalty, and the Felony Murder Statute, are Unconstitutional Because They Violate the New Mexico Constitution.

"III. Defendant Was Not Adequately Put on Notice of the Charges Against Him.

"IV. The Defendant's Statements Should Have Been Suppressed.

   A. Defendant's Statements Were the Fruits of His Illegal Arrest.

   B. The Provisions of the Public Defender Act Were not Complied With.

   C. The Statements Were Taken in Violation of Defendant's Right to Counsel.

"V. The Trial Court Erred in Refusing to Accept Defendant's Proferred [sic] Plea of Guilty to Voluntary Manslaughter.

"VI. The Trial Court Erred in Instructing the Jury That They Could Convict Defendant of First Degree Murder on a Felony-Murder Theory, Where the Underlying Felony was False Imprisonment.

"VII. The Evidence was Insufficient to Support a Verdict of Guilty of First Degree Murder, and the Court Erroneously Submitted Inapplicable Theories to the Jury.

"VIII. The Trial Court Erred in Failing to Instruct the Jury that it Must Find Express Malice to Support a Conviction for First Degree Murder.

"IX. The Trial Court Erred in Refusing to Discharge Juror Marvel Reynolds and Replace Her With an Alternate Juror."

By way of supplemental brief, defendant argues that the cause should be remanded to the trial court for the purpose of imposing a term of life imprisonment rather than the death penalty in view of the recent decisions of the United States Supreme Court concerning the mandatory death penalty.

■ The first point advanced by defendant with respect to the death penalty has been answered by us in *State v. Rondeau*, 89 N.M. 408, 553 P.2d 688 (1976). In that case we held that the penalty to be imposed for a first degree felony was life imprisonment under the provisions of § 40A–29–2.2, N.M.S.A.1953, in view of the most recent decisions of the United States Supreme Court.

■ The second point argued incorporates by reference the issues raised with respect to the felony-murder statute in *State v. Trivitt*, 89 N.M. 162, 548 P.2d 442

(1976). While we disapprove of incorporation by reference of arguments advanced in other cases, we hold that our decision in *State v. Trivitt*, supra, is dispositive of this issue. In that case we upheld the constitutionality of the felony-murder statute.

██ The defendant also argues in point III that he was not adequately put on notice of the charges against him, and contends under point VII that the evidence was insufficient to support a verdict of guilty of first degree murder, and that the court erroneously submitted inapplicable theories to the jury. The above two points will be discussed together. Defendant was charged by indictment on an "open" charge of murder, pursuant to §§ 40A–2–1, 40A–2–2 and 40A–2–3, N.M.S.A.1953 (2d Repl. Vol. 6, 1972). Defendant moved for a statement of facts, which was denied, the trial court ruling that the requirement of notice was satisfied by the State opening its file to the defendant. The defendant again, at the commencement of the trial, though not directly, requested that the State be required to state its theory and called the trial court's attention to the charge being one of "open" murder. Defendant was apparently proceeding on the assumption that the prosecution would proceed under the felony murder theory. We cannot say that the trial court committed error in denying the motion for a "statement of facts." It is obvious from a reading of the record that the State attempted to prove sodomy as the underlying felony. However, its requested instructions were refused for lack of proof and the jury was instructed on the felony of false imprisonment over the defendant's objections. Defendant, on appeal, also claims that the indictment was defective for not specifying the felony relied upon. Without ruling that the indictment was defective as contended because, as will be pointed out later, we cannot determine on what evidence the guilty verdict was returned by reason of the nature of the instructions, we do hold that, before the defendant can be convicted of felony murder,

he must be given notice of the precise felony with which he is being charged. Here, the felony was specified as being false imprisonment in the instructions but, as stated before, the record shows that there was considerable evidence presented in an attempt to prove sodomy. It seems unfair to place defendant in a position where he has to defend against unspecified felonies. In the instant case, however, the State opened its file to defense counsel instead of furnishing a statement of facts and hence we cannot say it was error to deny the motion for a statement of facts. We do hold that when felony murder is charged, the name of the felony underlying the charge must be either contained in the information or indictment or furnished to the defendant in sufficient time to enable him to prepare his defense.

We next consider the contention that the jury was erroneously instructed. The trial court instructed the jury on four separate theories of first degree murder:

"(1) By any kind of willful, deliberate and premeditated killing; or

"(2) by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life; or

"(3) from a deliberate and premeditated design unlawfully and maliciously to effect the death of any human being; or

"(4) while in the commission of or attempt to commit any felony."

██ Additionally, the jury was instructed on the elements of false imprisonment and advised that it was a felony. Another instruction was given following the two mentioned above, reading as follows:

"In cases of homicide, however, it is not always possible to prove express malice, nor is it always necessary that express malice be established by evidence. Malice may be implied from the circumstances at the time of the killing, and from the means used to accomplish the killing."

Though no objection was made to this instruction, we consider it on appeal on the authority of *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973), which ruled that failure to give an instruction containing an essential element of the crime charged is a jurisdictional issue and may be raised for the first time on appeal.

▆▆▆ Reading the foregoing instructions as a whole, we can only conclude that the jury was thus permitted to return a conviction of first degree murder, based upon a finding of implied rather than express malice. It is to be noted that the indictment charged the defendant with murder, pursuant to §§ 40A–2–1, 40A–2–2 and 40A–2–3, supra. Section 40A–2–2 defines both express and implied malice without explicit reference to the way in which the distinction applies to degrees of murder. However, we have consistently held that in New Mexico a finding of express malice is mandatory in order to support a conviction of first degree murder, while implied malice will suffice for second degree murder. *State v. Vigil,* 87 N.M. 345, 533 P.2d 578 (1975); *State v. Rushing,* 85 N.M. 540, 514 P.2d 297 (1973); *State v. Ulibarri,* 67 N.M. 336, 355 P.2d 275 (1960). Therefore, the instruction was incomplete, misleading and constitutes error.

▆▆▆ Next we consider the propriety of instructing on the four separate theories of murder. With respect to the instruction of willful, deliberate and premeditated murder, there is sufficient evidence to uphold the instruction, except for the error in the instruction regarding express malice. The giving of the instruction on felony murder can properly be sustained under the evidence. The court next gave an instruction on a "depraved mind," being instruction 4(2), and followed with instruction 4(3) which provides for murder "from a deliberate and premeditated design unlawfully and maliciously to effect the death of any human being." In the instant case, the defendant properly objected to the giving of such instructions. We recently had occasion to consider the propriety of such instructions in *State v. DeSantos,* 89 N.M. 458, 553 P.2d 1265, (1976). That case, which involved a first degree murder conviction, was submitted to the jury with instructions covering the same four subsections of the first degree murder statute as hereinbefore set out. In DeSantos we held that the instruction as to wilfull, deliberate and premeditated murder was proper, there being sufficient evidence to sustain it. We also held that there was no substantial evidence to support an instruction on felony murder. In passing upon the two other theories in DeSantos, we said, 89 N.M. at 461–462, 553 P.2d at 1268–69:

"An instruction on 'depraved mind' or 'universal malice' murder under § 40A–2–1(A)(4) was also given. This type of murder is generally defined as one in which the act done is dangerous to more than one person such as firing into a crowd or placing a bomb in an airport locker. See Committee Commentary to N.M.U.J.I.Crim. 2.05. [Footnote omitted.] See generally, R. Perkins, Criminal Law 36–7 (2d ed. 1969). There is no evidence that the defendant committed an act that was dangerous to more than one person. Killing someone with a cement block certainly is the work of a 'depraved mind,' but its usage in our murder statute and others like it [Footnote omitted.] has been limited to reckless acts in disregard of human life in general as opposed to the deliberate intention to kill one particular person. This instruction was improper.

"Finally, the jury was instructed under § 40A–2–1(A)(5) which provides for murder 'from a deliberate and premeditated design unlawfully and maliciously to effect the death of any human being.' This type is generally known as 'transferred intent' murder. See 1 O. Warren, Warren on Homicide § 73 (2d ed. 1938); Thompson & Gagne, The Confusing Law of Criminal Intent in New Mexico, 5 N. M.L.Rev. 63, 76 (1974). The common situation is when a person intends to kill one particular person and by accident or

otherwise kills a different person. [Footnote omitted.] There is no evidence that Daniel DeSantos intended to kill anyone other than Glennie McDonald. This instruction was improper.

"Jury instructions should be confined to the issues in the case and the facts developed by the evidence. *State v. Romero,* 73 N.M. 109, 385 P.2d 967 (1963); *State v. Beal,* 55 N.M. 382, 234 P.2d 331 (1951); *Velasquez v. United States,* 244 F.2d 416 (10th Cir. 1957). * * *"

The above authority is sufficient to enable us to conclude that it was error to so instruct because at this point we can only speculate as to what type of murder the defendant stands convicted of, and whether "implied malice" rather than "express malice" was the basis of the jury's verdict. Because such a possibility exists we have no choice but to reverse the conviction and remand for a new trial.

■■■ Since we are remanding for a new trial, it is appropriate to discuss two other points raised by defendant which need to be resolved. They relate to the contention that the defendant's statement received in evidence should be suppressed and that the trial court erred in refusing to accept the defendant's proffered plea of guilty to voluntary manslaughter. As to the latter contention, the court's refusal to accept a plea of guilty to the lesser charge is a matter within the court's discretion and subject to being overturned only for an abuse thereof. Under the circumstances here, the guilty plea being proffered almost at the end of the State's case, and in light of the nature of the evidence presented, we are satisfied that the court did not abuse its discretion in refusing to accept the proffered plea. See *State v. Leyba,* 80 N.M. 190, 453 P.2d 211 (Ct.App. 1969). Concerning the trial court's refusal to suppress the defendant's statements, it is contended that they were the fruit of his illegal arrest. Without detailing the evidence which was offered in connection with this issue, we are satisfied that the arresting officer was justified in making the stop for a registration check and that his request to see the automobile registration documents was warranted under the circumstances here present. Defendant was shortly thereafter arrested for being in possession of a stolen vehicle. See *State v. Bidegain,* 88 N.M. 466, 541 P.2d 971 (1975); *United States v. Lepinski,* 460 F. 2d 234 (10th Cir. 1972). As to defendant's contention that his statements were the fruit of his illegal arrest, we do not view defendant's arrest as being illegal under the state of the facts here. In any event, the evidence shows that the defendant's statements were taken by New Mexico officers two days subsequent to his arrest, after defendant had been properly warned of his rights. Additionally, at the suppression hearing, the defendant testified that the statements had been voluntarily given. Defendant also claims that statements were taken in violation of defendant's right to counsel. Again, the evidence at the suppression hearing indicates that the defendant intelligently and knowingly waived his right to have counsel present and that his statements were voluntarily given. Defendant also asserts that the provisions of the New Mexico Public Defender Act, § 41-22A-1 et seq., N.M.S.A.1953 (Supp. 1975), were not complied with. After considering the evidence submitted in behalf of the defendant on this issue, we are of the opinion that the defendant intelligently and knowingly waived his right to have counsel present and to consult with him before making any statement. See *State v. Rascon,* 89 N.M. 254, 550 P.2d 266 (1976), where this issue was thoroughly discussed and decided. In any event, we have ruled that the statements given by the defendant were voluntarily made.

The remaining issue raised regarding the failure to discharge a certain juror need not be discussed in view of our disposition of the case.

In view of all of the foregoing, the conviction of the defendant is reversed, the

judgment and sentence of the trial court is set aside, and the cause is remanded for a new trial.

IT IS SO ORDERED.

OMAN, C. J. and McMANUS, J., concur.