563 P.2d 1170
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John KING, Defendant-Appellant.**

**No. 2803.**

Court of Appeals of New Mexico.

April 19, 1977.

Vince D'Angelo, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., John J. Duran, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of second degree murder, with firearm enhancement, defendant appeals. The nine issues raised by defendant group into four categories. They are: (1) the charge; (2) the instructions; (3) the evidence; and (4) the prosecutor's closing argument.

### The Charge

The indictment was in four counts. Count 1 charged murder contrary to §§ 40A–2–1, 40A–2–2 and 40A–2–3, N.M.S.A.1953 (2d Repl.Vol. 6). These references are to statutes pertaining to first degree murder, second degree murder, express malice, implied malice, voluntary manslaughter and involuntary manslaughter.

Count 2 is the same as Count 1 with the addition the murder was with a firearm, contrary to § 40A–29–3.1, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1975). Count 3 charged voluntary manslaughter with a firearm. Count 4 charged involuntary manslaughter with a firearm.

In addition, there is a general notation on the indictment that defendant was charged with first degree murder, second degree murder with a firearm, voluntary manslaughter with a firearm and involuntary manslaughter with a firearm. The failure to refer to a firearm in the first degree murder charge was correct because first degree murder is defined as a capital felony and the firearm enhancement provision does not apply to capital felonies. See § 40A–2–1 and § 40A–29–3.1, supra.

Defendant did not challenge the sufficiency of the indictment prior to trial; he did not claim the indictment did not give him sufficient notice of the charges against him so that he could prepare his defense.

At trial, after the close of the evidence, the trial court struck Counts 2, 3, and 4 as surplusage on the basis that second degree murder, voluntary manslaughter and involuntary manslaughter were included in Count 1. The specific statutory references in Count 1 show that the trial court was correct.

■ Defendant contends that after Counts 2, 3, and 4 were stricken, Count 1 did not charge a crime. He claims specific section numbers were not referred to; quite clearly there was such a reference. See *State v. Nixon*, 89 N.M. 129, 548 P.2d 91 (Ct.App.1976). He also claims that essential facts were missing. Count 1 charged defendant with the murder of Lynn Allen in Bernalillo County on a specified date in violation of specific statutes. No essential facts were missing; there was no violation of R.Crim.P. 5(d). *State v. Cutnose*, 87 N.M. 307, 532 P.2d 896 (Ct.App.1974); *State v. Vigil*, 85 N.M. 328, 512 P.2d 88 (Ct.App. 1973); see *State v. Hamilton*, 89 N.M. 746, 557 P.2d 1095 (1976).

Defendant asserts the indictment was duplicitous in that it charged violation of statutes which defined mutually exclusive crimes. Duplicity is the joinder of two or more distinct and separate offenses in the same count. *State v. Gurule*, N.M., 559 P.2d 1214 (Ct.App.1977).

■ A charge of murder in violation of statutes pertaining to first and second degree murder and voluntary and involuntary manslaughter is not a charge of mutually exclusive crimes. Neither is it a charge of distinct and separate offenses. Compare the charge in *State v. Hicks*, 89 N.M. 568, 555 P.2d 689 (1976). Rather the charge is an open charge of murder, a form of charging approved in *State v. Roy*, 40 N.M. 397, 60 P.2d 646 (1936), 110 A.L.R. 1 (1937). Under such an open charge, the jury is to be instructed on the degrees of the unlawful killing for which there is evidence. *Torres v. State*, 39 N.M. 191, 43 P.2d 929 (1935); *State v. Reed*, 39 N.M. 44, 39 P.2d 1005 (1934), 102 A.L.R. 995 (1936); *State v. Burrus*, 38 N.M. 462, 35 P.2d 285 (1934). *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976), on which defendant relies, does not announce a different rule. *Smith* did not involve pleadings; *Smith* held there was no evidence for the submission of voluntary manslaughter to the jury.

■ Defendant claims that after Counts 2, 3 and 4 were stricken, the indictment left the prosecutor free to proceed upon any theory it chose. Defendant seems to be arguing that he did not have notice "of what he must be prepared to meet". The indictment charged murder. *State v. Roy, supra,* states:

"No citizen of even less than average intelligence can fail to understand the significance of a charge of murder preferred against him. In its usual acceptation it means the taking of a human life unlawfully."

Defendant was given notice that he must defend against a charge of unlawfully taking a human life.

■ Defendant contends that the striking of Counts 2, 3, and 4 was prejudicial— "the Court was changing the charges to suit its own notions of what the grand jury wanted to do." The contention is frivolous. Defendant faced the same charges both before and after the counts were stricken. Because the stricken counts were surplusage there was no prejudice.

■ Defendant objected to submitting the question of use of a firearm to the jury. The charge of killing with a firearm was contained in the counts which were stricken. Since Count 1 did not charge a killing with a firearm, defendant complains that submitting the question to the jury was contrary to *State v. Blea*, 84 N.M. 595, 506 P.2d 339 (Ct.App.1973). "*Blea* holds that a defendant must be given notice, in the criminal charge, that he used a firearm in committing the crime. We reaffirm this holding . . . ." *State v. Barreras*, 88 N.M. 52, 536 P.2d 1108 (Ct.App.1975).

Prior to the striking of Counts 2, 3 and 4, defendant was given such notice. When defendant objected to submitting the question to the jury, the trial court stated that it had not intended to strike the charge that the killing was with a firearm. Defendant claims he was prejudiced by the trial court's reinstatement of the firearm charge which had previously been stricken. We disagree. No additional or different offense was charged by the reinstatement. See *State v. Padilla*, 86 N.M. 282, 523 P.2d 17 (Ct.App. 1974). There was no prejudice because the taking of evidence had been concluded before Counts 2, 3, and 4 were originally stricken; any defense to the firearm charge had been presented in defending against the firearm charge in Counts 2, 3, and 4.

*Instructions*

■ The trial court did not read the indictment to the jury. Defendant asserts this was fundamental error; unless the "jury knows what crimes are charged in an indictment, they simply cannot be certain they are convicting the Defendant of the right crime." The contention is frivolous. The trial court is to instruct the jury upon questions of law necessary for guidance in returning a verdict. R.Crim.P. 41. In accordance with U.J.I.Crim. 50.00, the law governing the case was contained in the instructions given. It would have been improper to instruct the jury by reference to the indictment. *State v. Kendall*, (N.M.Ct. App.) 561 P.2d 935, decided January 4, 1977, and cases therein cited, overruled on other grounds, *Kendall v. State*, N.M., 561 P.2d

464, decided March 9, 1977. The instructions informed the jury of the charges they were to consider.

Defendant asserts the instruction on first degree murder injected a false issue into the case because the indictment did not charge first degree murder. This claim is also frivolous; Count 1 charged first degree murder.

■ Defendant contends U.J.I.Crim. 2.10 is erroneous; *State v. Scott*, (N.M.Ct.App.) 561 P.2d 1349, decided March 1, 1977 points out why this Court has no authority to review such a claim.

■ Defendant claims the trial court erred in refusing to instruct on involuntary manslaughter. He asserts the evidence indicates that he "was engaged in the commission of a lawful act which might produce death, (self-defense) in an unlawful manner or without due caution and circumspection." We do not reach the question of whether defendant was acting in self-defense at the time of the killing. *State v. Pruett*, 27 N.M. 576, 203 P. 840 (1921), 21 A.L.R. 579 (1922) states that the involuntary manslaughter statute, § 40A–2–3(B), supra:

"excludes all cases of intentional killing, and include only unintentional killings by acts unlawful, but not felonious, or lawful, but done in an unlawful manner, or without due caution and circumspection. In other words, the killing must be unintentional to constitute involuntary manslaughter, and, if it is intentional and not justifiable, it belongs in some one of the classes of unlawful homicide of a higher degree than involuntary manslaughter."

See 1 Wharton's Criminal Law and Procedure (Anderson), § 289 (1957); compare U.J.I.Crim. 2.30 and 2.31. The evidence is that the killing was intentional. Defendant, who was the initial aggressor, and the victim were struggling for the gun. Defendant retrieved the gun, placed it at the back of the victim's head and pulled the trigger.

There is another reason why there was no error in refusing to instruct on involuntary manslaughter. First and second degree

murder and voluntary manslaughter were submitted to the jury. Following U.J.I. Crim. 2.40, the jury was told to first determine whether defendant was guilty of first degree murder. Only after disagreement on first degree murder was second degree murder to be considered. Only after disagreement on second degree murder was voluntary manslaughter to be considered. Defendant was convicted of second degree murder; the jury never reached the question of voluntary manslaughter. In light of the instructions on the procedure to be followed, failure to instruct on involuntary manslaughter was not error. *State v. Scott, supra.*

### Evidence

Defendant contends that, "at best," the State's case is one of manslaughter and not second degree murder. Defendant asserts the State failed to prove the absence of provocation and failed to prove that defendant did not act in self-defense. We disagree. The evidence on provocation sufficient to reduce the killing from murder to voluntary manslaughter and the evidence of self-defense was conflicting. With this conflict, the questions were factual ones to be resolved by the jury. The trial court properly submitted the issues of second degree murder, voluntary manslaughter and self-defense to the jury.

During direct examination of the victim's mother, the State brought out that a child of the victim told the victim's mother (the child's grandmother) that defendant had killed " 'my momma' ". Defendant did not object to this testimony. Subsequently, the State attempted to elicit testimony that the child told the grandmother that defendant had hit the child. Defendant objected that the question was leading. The objection was sustained and the jury was admonished to disregard the grandmother's answer.

Thereafter, out of the presence of the jury, the State tendered evidence to show that the child's comment was admissible as an excited utterance. The trial court ruled that the showing was insufficient and that the grandmother could not testify about statements made by the child. Compare *State v. Lunn*, 82 N.M. 526, 484 P.2d 368 (Ct.App.1971). After this ruling by the trial court, defendant claimed that the State had failed in its duty of continuing disclosure and moved for a mistrial. The motion for mistrial was denied.

When proceedings resumed in the presence of the jury, the State attempted to evade the trial court's ruling by an artfully worded question; however, the defense objection was sustained. Defendant again moved for a mistrial, arguing that even though the question was not answered, the State had left the inference that defendant beat the child. "I don't think he can get a fair trial from this point on."

We are not concerned with the continuing duty of disclosure. The trial court refused to admit the evidence. Certainly the defendant was not prejudiced by the exclusion of the testimony. R.Crim.P. 30; *State v. Wilkins*, 88 N.M. 116, 537 P.2d 1012 (Ct. App.1975); see *Chacon v. State*, 88 N.M. 198, 539 P.2d 218 (Ct.App.1975).

Defendant claims that the prosecutor asked the questions in a bad faith effort to introduce evidence that the prosecutor knew was inadmissible. Defendant's argument is based on *State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966). *Rowell* held the prosecutor's question to the mother about a prior conviction of the daughter was asked in bad faith, had "no possible place in the trial" and was prejudicial even though the question was not answered. That is not the situation here. Whether the child had injuries was relevant, and the trial court so ruled. The trial court excluded testimony that defendant had caused the injuries because the testimony, as tendered, was not admissible.

We cannot say that the questions asked of the grandmother were asked in bad faith as a matter of law. See *State v. Garcia*, 80 N.M. 247, 453 P.2d 767 (Ct.App.1969). In our view, the prompt sustaining of the objection and the admonition to disregard the answer cured any prejudicial effect from testimony inadmissible because hearsay.

**382**

*State v. Garcia,* 79 N.M. 367, 443 P.2d 860 (1968). Further, the prosecutor's attempt to evade the trial court's exclusionary ruling did not deprive defendant of a fair trial because objection to the question was promptly sustained and the question was never answered. *State v. McFerran,* 80 N.M. 622, 459 P.2d 148 (Ct.App.1969).

 A motion for mistrial is addressed to the trial court's discretion and is reviewable for an abuse of discretion. State v. Padilla, 86 N.M. 282, 523 P.2d 17 (Ct.App. 1974). In the circumstances of this case, we cannot say there was an abuse of discretion in denying defendant's motions.

*Closing Argument*

 R.Crim.P. 40 provides that the State opens the closing argument, the defense then argues and the "state may make rebuttal argument only." Defendant claims the State asserted its theory of the case for the first time during its rebuttal argument and that defendant was prejudiced because unable to respond to the new theory. The claim is frivolous. The rebuttal argument, even when taken out of context as defendant does, is fairly within the evidence and consistent with the State's theory of first degree murder presented throughout the trial, including its opening argument.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.